1    ORRICK, HERRINGTON & SUTCLIFFE LLP
     JACOB M. HEATH (SBN 238959)
2    jheath@orrick.com
     1000 Marsh Road
3    Menlo Park, CA 94025-1015
     Telephone:    (650) 614-7321
4    Facsimile:    (650) 614-7401

5    Attorney for Defendant FACEBOOK, Inc.

6

7

8                        **UNITED STATES DISTRICT COURT**

9                     **NORTHERN DISTRICT OF CALIFORNIA**

10                        **SAN FRANCISCO DIVISION**

11

12   JUSTIN HART,                          Case No. 3:22-cv-00737-CRB

13              Plaintiff,                  **DEFENDANT FACEBOOK, INC.'S
                                            REPLY IN SUPPORT OF DEFENDANT'S
14        v.                                MOTION TO DISMISS PURSUANT TO
                                            12(B)(6) AND ANTI-SLAPP MOTION TO
15   FACEBOOK, INC. et al.,                 STRIKE**

16              Defendants.                 Date:      May 12, 2022
                                            Time:      10:00 a.m.
17                                          Dept:      6-17th Floor
                                            Judge:     Hon. Charles R. Breyer
18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................. 1

II.    LEGAL ARGUMENT .......................................................................................... 2

      A.    Section 230(c)(1) of the CDA Bars All Liability, And Plaintiff Has Waived Any Argument To The Contrary ................................................................. 2

           1.     Plaintiff has waived any objection to dismissal under Section 230(c)(1). ........................................................................................ 2

           2.     Dismissal under Section 230 should include Plaintiff's First Amendment claim. ............................................................................. 4

      B.    Plaintiff Cannot State A Claim That Facebook Violated His First Amendment Right of Free Speech. ............................................................. 4

           1.     Facebook is not a state actor, which forecloses all relief under the First Amendment. ...................................................................... 5

           2.     Plaintiff lacks standing to seek his requested relief because he has not pleaded any facts about his future conduct. ........................... 7

      C.    Plaintiff's State Law Claims Against Facebook Should Be Dismissed. ............ 8

           1.     Plaintiff's California constitutional free speech claim should be dismissed for lack of state action and for otherwise failing to state a claim. .................................................................................. 8

           2.     Plaintiff's promissory estoppel claim should be dismissed for failure to plead a clear promise or reasonable reliance. ..................................... 10

           3.     Plaintiff's intentional interference with contract claim should be dismissed for failing to plead a valid contract, Facebook's knowledge of it, or intent to interfere. ................................................................ 11

           4.     Plaintiff's negligent interference with prospective economic advantage claim should be dismissed for failing to plead a prospective economic advantage. ......................................................................... 13

      D.    The State Law Claims Should Independently Be Struck Under California's Anti-SLAPP Statute. ......................................................................... 13

      E.    Plaintiff Should Not Be Granted Leave To Amend. ...................................... 14

III.   CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aceves v. U.S. Bank, N.A.*,
  192 Cal. App. 4th 218 (2011) .................................................................................................10

*Armstrong v. Exceptional Child Center, Inc.*,
  575 U.S. 320 (2015) ................................................................................................................4

*Atkinson v. Meta Platforms, Inc.*,
  No. 20-17489, 2021 WL 5447022 (9th Cir. 2021) .............................................................5, 7

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) .................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................6

*Bolbol v. Feld Ent., Inc.*,
  613 F. App'x 623 (9th Cir. 2015) ............................................................................................8

*Brittain v. Twitter, Inc.*,
  No. 19-cv-00114-YGR, 2019 WL 2423375 (N.D. Cal. June 10, 2019)................................15

*Brock v. Zuckerberg*,
  No. 21-1796, 2022 WL 1231044 (2d Cir. 2022) .....................................................................7

*In re Centerstone Diamonds, Inc.*,
  No. 2:13-ap-02040-PC, 2014 WL 1330186 (C.D. Cal. Apr. 2, 2014)...................................11

*Children's Health Defense v. Facebook, Inc.*,
  546 F. Supp. 3d 909 (N.D. Cal. 2021) .................................................................................6, 7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)................................................................................................................8

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190 (2017) ...................................................................................................2

*Daniel v. Wayans*,
  8 Cal. App. 5th 367 (2017) .....................................................................................................9

*Daniels v. Alphabet Inc.*,
  No. 20-CV-4687, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021)...................................3, 5, 7

*Davis v. Nadrich*,
  174 Cal. App. 4th 1 (2009) ...................................................................................................12

ii

*Domen v. Vimeo, Inc.*,
    433 F. Supp. 3d 592 (S.D.N.Y. 2020) .............................................................2, 3, 9

*Ebeid v. Facebook, Inc.*,
    No. 18-CV-7030, 2019 WL 2059662 (N.D. Cal. May 9, 2019) ...................................4

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) .............................................................5, 6, 7

*Flores v. Emerich & Fike*,
    No. 1:05-cv-0291 OWW DLB, 2006 WL 2536615 (E.D. Cal. Aug. 31, 2006) ....................15

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ..............................................................................................4

*Friends of the Earth, Inc. v. Laidlaw*,
    528 U.S. 167 (2000) ..............................................................................................8

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) ...............................................................................10

*Greater L.A. Agency of Deafness, Inc. v. CNN*,
    742 F.3d 414 (9th Cir. 2014) ...............................................................................14

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
    138 S. Ct. 13 (2017) ..............................................................................................3

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) ................................................................9

*Holomaxx Techs. v. Microsoft Corp.*,
    783 F. Supp. 2d 1097 (N.D. Cal. 2011) ................................................................3

*Hupp v. Freedom Commc'ns, Inc.*,
    221 Cal. App. 4th 398 (2013) ..............................................................................14

*I-CA Enters., Inc. v. Palram Ams., Inc.*,
    235 Cal. App. 4th 257 (2015) ..............................................................................11

*Informed Consent Action Network v. YouTube LLC*,
    No. 20-cv-09456-JST, 2022 WL 278386 (N.D. Cal. 2022) ...............................6, 7

*Johnson v. Knowles*,
    113 F.3d 1114 (9th Cir. 1997) ...............................................................................5

*Jurin v. Google Inc.*,
    695 F. Supp. 2d 1117 (E.D. Cal. 2010) .................................................................2

iii

*Kinderstart.com LLC v. Google, Inc.*,
No. 06-CV-2057, 2007 WL 831806 (N.D. Cal. 2007) ............................................9

*King v. Facebook, Inc.*,
No. 19-cv-01987-WHO, 2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ...................2

*King v. Facebook Inc.*,
No. 21-CV-4573-EMC, 2021 WL 5279823 (N.D. Cal. Nov. 12, 2021) ................15

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020)......................................................................14

*Lewis v. Google LLC*,
461 F. Supp. 3d 938 (N.D. Cal. 2020) ..............................................2, 4

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ..............................................................15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................................8

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921 (2019) .............................................................................8

*Murphy v. Twitter, Inc.*,
60 Cal. App. 5th 12 (2021) ...........................................................10, 15

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) .................................................................13

*Packingham v. North Carolina*,
137 S. Ct. 1730 (2017) .............................................................................9

*Pathfinder Aviation, Inc. v. XTO Energy Inc.*,
No. 15-CV-200, 2016 WL 8290125 (D. Ala. Feb. 1, 2016)......................7

*Pers. Elec. Transps, Inc. v. Off. of U.S. Tr.*,
313 F. App'x 51 (9th Cir. 2009) .........................................................2, 9

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*,
890 F.3d 828 (9th Cir. 2018) ..........................................................13, 14

*Prager Univ. v. Google LLC*,
951 F.3d 991 (9th Cir. 2020) ...................................................................8

*Prager Univ. v. Google LLC*,
No. 19-CV-340667, 2019 WL 8640569 (Cal. Super. Ct. Nov. 19, 2019) ...............9

iv

*Prof. Bus. Bank v. FDIC*,
   No. 10-CV-4614, 2011 WL 13109254 (C.D. Cal. Oct. 4, 2011)......................................13, 15

*Royal Holdings Techs. Corp. v. FLIR Sys., Inc.*,
   No. 20-CV-9015, 2021 WL 945246 (C.D. Cal. Jan. 8, 2021) ...................................................12

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) .................................................................................................13

*Smith v. Santa Rosa Democrat*,
   No. C 11-02411 SI, 2011 WL 5006463 (N.D. Cal. Oct. 20, 2011) .........................................15

*UMG Recordings, Inc. v. Global Eagle Ent., Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................................................11

*United National Maintenance, Inc. v. San Diego Convention Ctr., Inc.*,
   766 F.3d 1002 (9th Cir. 2014) ...............................................................................................11

*Zhou v. Breed*,
   No. 21-15554, 2022 WL 135815 (9th Cir. 2022) .....................................................................5

*Zimmerman v. Facebook, Inc.*,
   2020 WL 5877863 (N.D. Cal. 2020) .......................................................................................9

**Statutes**

47 U.S.C. § 230.............................................................................................................. *passim*

**Other Authorities**

Rule 12(b)(6)...........................................................................................................13, 14

Rule 26(d)(2)...................................................................................................................7

Rule 26(d)(2)(B)..............................................................................................................7

Rule 26(f).........................................................................................................................7

I.       INTRODUCTION

Plaintiff's Opposition ("Opp.") only underscores that his Complaint fails to assert a single viable claim for relief. *First,* Plaintiff omits any argument contesting the applicability of Section 230(c)(1). By failing to do so, Plaintiff has waived any opposition, and Facebook's immunity under Section 230(c)(1) is undisputed. This reason alone warrants dismissal of Plaintiff's entire Complaint.

*Second*, Plaintiff's Opposition confirms that his claims fail as a matter of law. As to his First Amendment free speech claim, the law is clear that Plaintiff must establish state action by pleading either act of actual coercion by a government official or a conspiracy between Facebook and the government to take down his post. Plaintiff's Complaint failed to plead facts to establish either theory, and his Opposition only double downs on the Complaint's deficient factual allegations. Plaintiff's California constitutional claim also fails for want of state action. In his Opposition, Plaintiff fails to cite any authority that has applied California's free speech clause to social media sites, and he fails to engage with the welter of cases that have gone the other way. Plaintiff's promissory estoppel claim is defective because he pleads reliance on vague statements from Facebook's Terms of Service while admitting that he knew Facebook often removed content for violating Community Standards. His intentional interference with contract claim fails because he has not pleaded even basic details of the contract at issue. And his negligent interference with prospective economic advantage claim fails because he has not pleaded a prospective economic advantage arising out of something other than a contract.

*Third,* Plaintiff's state law claims should also be struck under California's anti-SLAPP statute. Plaintiff wrongly contends that the statute does not apply in federal court and that it does not protect decisions about content moderation. But The Ninth Circuit has squarely held that it applies in federal court, and California courts have squarely held that its protections extend to content moderation decisions like the one at issue here.

*Finally*, Plaintiff should not be granted leave to amend because amendment would be futile. A successful anti-SLAPP motion should result in dismissal with prejudice. And the various defects

1

1    with Plaintiff's various claims cannot be cured by further factual allegations.

2    **II.    LEGAL ARGUMENT**

3              **A.    Section 230(c)(1) of the CDA Bars All Liability, And Plaintiff Has Waived Any Argument To The Contrary.**

4

5              A claim must be dismissed under Section 230(c)(1) of the Communications Decency Act, 47

6    U.S.C. § 230 *et seq.*, if it treats a "provider" of an "interactive computer service" as the "publisher"

7    of content "provided by another information content provider." 47 U.S.C. § 230(c)(1).  As

8    established in Facebook's Motion to Dismiss ("MTD"), all of Plaintiff's claims are barred because

9    they each seek to hold Facebook (a provider of an interactive computer service) liable for its

10   decision to remove content that Plaintiff created. *See* MTD at 14–17.[1]

11             **1.    Plaintiff has waived any objection to dismissal under Section 230(c)(1).**

12             In his opposition, Plaintiff *expressly* confines his Section 230 arguments to subsection (c)(2)

13   (*see* Opp. at 21–26), arguing "only" that Section 230 provides a liability shield . . . [under]

14   § 230(c)(2)," and that Facebook did not qualify for subsection (c)(2) immunity because it did not

15   remove Plaintiff's post "voluntarily, in good faith, or upon consideration [by] Facebook." *See* Opp.

16   at 22.  Plaintiff does not contest any of Facebook's arguments that it is immune under Section

17   230(c)(1).  Thus, by "failing to raise it in [his] opposition," Plaintiff has "waived" any argument

18   against dismissal under Section 230(c)(1). *Pers. Elec. Transps, Inc. v. Off. of U.S. Tr.*, 313 F. App'x

19   51, 52 (9th Cir. 2009) ("[T]he district court correctly opined that Appellants had waived their 'access

20

21   ───────────────

[1] As Facebook explained (*see* MTD at 15–17), courts have routinely dismissed these precise claims when they have been premised on a defendant's decision to remove user content from its website. *See, e.g.*, *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 955 (N.D. Cal. 2020) (dismissing First Amendment claim under (c)(1)); *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 607 (S.D.N.Y. 2020) (dismissing California constitutional free speech claim under (c)(1)); *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 4221768, at *1–5 (N.D. Cal. Sept. 5, 2019) (dismissing promissory estoppel claim under (c)(1) for seeking to enforce Facebook's Terms of Service); *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1122 (E.D. Cal. 2010) (dismissing claims of intentional interference with contract and negligent interference with prospective economic advantage under (c)(1)); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017) (dismissing claim of negligent interference with prospective economic advantage under (c)(1)).

22

23

24

25

26

27                                          2

28

1    to the courts' argument for failing to raise it in their opposition to the Trustee's motion to dismiss.");

2    *see also Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017) (noting that

3    if an argument is not "timely assert[ed]," it is forfeited).  Accordingly, Plaintiff's claims against

4    Facebook must be dismissed under Section 230(c)(1).[2]

5            To be clear, Facebook would also have a viable Section 230(c)(2) defense.  Under Section

6    230(c)(2), a defendant cannot "be held liable" if it is (1) an "interactive computer service" that (2)

7    "voluntarily block[s] or filter[s] material it considers to be obscene, lewd, lascivious, filthy,

8    excessively violent, harassing, or otherwise *objectionable*," (3) and does so in "good faith."

9    *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1104 (N.D. Cal. 2011) (emphasis added)

10   (quoting § 230(c) (2)).  Specifically, to overcome Section 230(c)(2) immunity, a plaintiff must plead

11   facts that establish that the defendant acted in "bad faith."  *Id.*  Plaintiff cannot do so here because he

12   acknowledges (as he must) that his post was removed for violating Facebook's Community

13   Standards.  *See* Compl. 5 ¶¶ 1–4.  When a website removes or restricts access to content for violating

14   its "stated policies and guidelines," it has acted in good faith.  *Daniels v. Alphabet Inc.*, No. 20-CV-

15   4687, 2021 WL 1222166 at *11–12 (N.D. Cal. Mar. 31, 2021) (holding that plaintiff failed to plead

16   bad faith because YouTube removed content that was "contrary to its stated policies and

17   guidelines"); *Domen*, 433 F. Supp. 3d at 604 (holding that bad faith could not be established

18   because, "[b]ased upon the allegations of the [complaint], what occurred here is that Vimeo applied

19   its Guidelines to remove Plaintiffs' videos, since such videos violated the Guidelines").  Facebook's

20   decision to remove Plaintiff's post is indistinguishable from the content moderation decisions

21   shielded from liability in *Daniels* and *Domen*.  Thus, in addition to waiving any objection to

22   dismissal under Section 230(c)(1), Plaintiff has failed to plead facts sufficient to defeat immunity

23   under Section 230(c)(2).

24   _____

25   [2] While Facebook sought dismissal under subsection (c)(1), *see* MTD at 14–17, Twitter sought
     dismissal under both subsections (c)(1) and (c)(2), *see* Twitter Mot. to Dismiss at 20–21.  Plaintiff's
26   opposition disputes only the applicability of subsection (c)(2).  *See* Opp. at 21–26.  Thus, Facebook's
     immunity under subsection (c)(1) is unopposed.
27
                                                            3
28

2.       **Dismissal under Section 230 should include Plaintiff's First Amendment claim.**

Under Section 230, *all* of Plaintiff's claims must be dismissed, including his claim under the First Amendment.  In his Opposition, Plaintiff erroneously argues that Section 230 is not a defense against his First Amendment claim.  *See* Opp. at 22.  As Plaintiff himself acknowledges, his First Amendment claim is brought under an implied "private right of action" arising "directly under the Constitution."  Opp. at 13; *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) (recognizing "an implied private right of action directly under the Constitution to challenge governmental action" for violating the Constitution).  And the Supreme Court has made clear that "Congress may displace the [implied cause of action] that is traditionally available to enforce federal law" by enacting a conflicting statute.  *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 329 (2015) (holding that the implied right of action to enforce a provision of federal law was "impliedly preclude[d]" by the Medicaid Act).  Displacement may be either "express" or "implied."  *Id.* at 327.  Here, Congress has *expressly* displaced Plaintiff's cause of action by enacting Section 230, which "bars courts from treating certain internet service providers as publishers or speakers."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009); *see* § 230(c)(1).  Thus, Congress has deprived Plaintiff of a cause of action to bring his First Amendment claim, which must be dismissed.  *See, e.g.*, *Ebeid v. Facebook, Inc.*, No. 18-CV-7030, 2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019) (dismissing a First Amendment claim under Section 230); *Lewis*, 461 F. Supp. 3d at 955 (dismissing First Amendment claim under Section 230).

B.       **Plaintiff Cannot State A Claim That Facebook Violated His First Amendment Right of Free Speech.**

As Facebook established (*see* MTD 5-8), Plaintiff's First Amendment claim also fails for two independent reasons: (1) he has not alleged facts to show that Facebook is a state actor, and (2) he lacks standing to seek the requested relief.[3]  Nothing in Plaintiff's opposition overcomes these defects.

---

[3] Plaintiff has abandoned any claim to monetary damages under the First Amendment and now seeks only an injunction. *See* Opp. at 13–14 (defending only his request for an injunction).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   Facebook is not a state actor, which forecloses all relief under the First Amendment.

Plaintiff asserts two contradictory theories of state action: (1) that Facebook was "coerced" by the government into taking down his post and (2) that Facebook voluntarily "cooperated" with the government to take down his post.  Plaintiff fails to plead facts sufficient to plead a First Amendment claim under either theory.

Plaintiff's coercion theory fails because he does not plead a "state regulation or custom *having the force of law* that compelled, coerced, or encouraged" Facebook to take down Plaintiff's post. *Johnson v. Knowles*, 113 F.3d 1114, 1120 (9th Cir. 1997) (emphasis added).  The Complaint relies entirely on informal press statements from members of the Biden Administration, none of which carried the force of law.  *See* Compl. 7–8, ¶¶ 10–20.  Plaintiff's Opposition similarly relies on informal press statements to argue that the Administration was attempting to "shame[]" and "humiliate" social media companies into doing more on COVID.  Opp. at 3–4; *see* Compl. 8 ¶ 19 ("Biden . . . threatened social media companies . . . by publicly shaming and humiliating them.").  But shame and criticism do not carry with them the "force of law" and have no legal effect, which means that those factual allegations are irrelevant to the state action analysis.  *See, e.g.*, *Zhou v. Breed*, No. 21-15554, 2022 WL 135815, at *1 (9th Cir. 2022) ("The mere fact that . . . public officials criticized a billboard [and] called for its removal . . . does not make that billboard's subsequent removal by a private party state action."); *Daniels*, 2021 WL 1222166, at *6 (noting that "government officials' public denunciations . . . did not constitute government compulsion").

Plaintiff's joint action theory is equally deficient.  To plead joint action, Plaintiff must plead facts that establish "an agreement or a meeting of the minds between Facebook and the government relating to Facebook's deletion of [Plaintiff's] Facebook [post]."  *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1126 (N.D. Cal. 2020).  Put simply, Plaintiff's Complaint must contain facts establishing that there was a conspiracy to delete *Plaintiff's* particular post.  *See id.* (rejecting "allegations [that] are unconnected with Facebook's April 3, 2018 decision to delete [plaintiff's] Facebook page"); *Atkinson v. Meta Platforms, Inc.*, No. 20-17489, 2021 WL 5447022, at

5

*1 (9th Cir. 2021) (requiring allegations that the government participated in "Meta Platforms' editorial decisions" and refusing to find state action based on the absence of facts "such as an agreement between state governments and Meta Platforms; state action participation in Meta Platforms' corporate governance; financial ties between state governments and Meta Platforms; or Meta Platforms' regulation of state activities").  As established in Facebook's Motion (*see* MTD at 5–6), there are no allegations that the Biden Administration knew Plaintiff existed, was aware of Plaintiff's posts, or conspired with Facebook to censor his social medial posts.  Save a single, conclusory statement, none of Plaintiff's allegations about the government even "mention [him] at all."[4]  As such, Plaintiff failed to establish joint action as a matter of law.  *See id.* at 1126.[5]

Plaintiff's Opposition does nothing to revive his doomed "joint action" theory.  Plaintiff erroneously argues, for example, that he does not need to allege a conspiracy "with respect to him specifically."  Opp. at 7.  He is flatly wrong, as countless cases indicate.  *See, e.g.*, *Informed Consent Action Network v. YouTube LLC*, No. 20-cv-09456-JST, 2022 WL 278386, at *5 (N.D. Cal. 2022) (requiring facts "support[ing] the inference that [the social media site] … worked in concert with the

---

[4] The only allegation that mentions Plaintiff is that, "[o]n information and belief, President Biden and [the Surgeon General] directed [Facebook] to remove Hart's social media posts."  Compl. at 8 ¶ 20.  This is the quintessential "bare allegation of joint action" that "will not overcome a motion to dismiss."  *Children's Health Defense v. Facebook, Inc.*, 546 F. Supp. 3d 909, 931 (N.D. Cal. 2021); *see Fed. Agency of News*, 432 F. Supp. 3d at 1126 (rejecting a nearly identical allegation as "conclusory"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 551 (2007) (holding that the allegation of a conspiracy "upon information and belief" failed to state a claim).

[5] Plaintiff's allegations are independently insufficient because he relies only on government statements made *after* Facebook took down Plaintiff's post.  *See* Compl. 6 ¶ 7.  In response, Plaintiff argues that the timeline does not matter because the government statements were descriptions of "already-existing" policy.  Opp. at 9.  But as many courts have held, statements of already-existing policy "do little to demonstrate joint action" and are "unconnected" to actions taken before the statements were made.  *Federal Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1125 (N.D. Cal. 2020) (ignoring statements acknowledging an existing "partnership" between Facebook and the government because they "post-date[d]" Facebook's removal of plaintiff's post); *see also Children's Health Defense*, 546 F. Supp. 3d at 930 (discounting a letter from a government official urging acting on misinformation because "Facebook began censoring [plaintiff's] speech . . . prior to [the official's] letter").

CDC to censor [the plaintiff's speech]"); *Children's Health Def. v. Facebook, Inc.*, 546 F. Supp. 3d 909, 931 (N.D. Cal. 2021) (requiring "specific facts showing that [Facebook] jointly acted with the federal government when Facebook took various actions regarding [plaintiff's] Facebook page"); *Fed. Agency of News*, 432 F. Supp. 3d at 1126 (requiring "specific facts establishing the existence of an agreement or a meeting of the minds between Facebook and the government relating to Facebook's deletion of [plaintiff's Facebook page"). By failing to plead the existence of an agreement or conspiracy to remove his post, Plaintiff cannot establish joint action.[6]

As a more general matter, Plaintiff simply ignores the logic and holdings of countless cases that have uniformly and pointedly rejected these arguments he now makes. *See, e.g.*, *Brock v. Zuckerberg*, No. 21-1796, 2022 WL 1231044, at *1 (2d Cir. 2022) (Facebook is not a state actor); *Atkinson*, 2021 WL 5447022, at *1 (Facebook is not a state actor under coercion or joint action tests); *Informed Consent Action Network*, 2022 WL 278386, at *4 (YouTube is not a state actor under coercion or joint action tests); *Children's Health Defense*, 546 F. Supp. 3d at 927 (Facebook is not a state actor under the joint action test); *Federal Agency of News*, 432 F. Supp. 3d at 1124 (Facebook is not a state actor under joint action test); *Daniels*, 2021 WL 1222166, at *6 (Google is not a state actor under joint action test). Plaintiff simply regurgitates "losing assertion[s]" without explaining how they can be harmonized with this vast body of case law. *Children's Health Defense*, 546 F. Supp. 3d at 930. And he provides no reason to think that this time around, the analysis should come out differently. Plaintiff's First Amendment claim should be dismissed for lack of state action.

### 2.   Plaintiff lacks standing to seek his requested relief because he has not pleaded any facts about his future conduct.

Plaintiff's First Amendment should also be dismissed for lack of standing. Plaintiff seeks only an injunction under the First Amendment. *See* Opp. at 13–14. To have standing to seek an injunction,

---

[6] Plaintiff argues that if he has failed to plead a conspiracy, his "failure to do so" is because Facebook has not responded to his document requests under Rule 26(d)(2). *See* Opp. at 7–8. Such a request, however, "is considered to have been served at the first Rule 26(f) conference." Rule 26(d)(2)(B). Thus, Plaintiff's discovery requests "have not yet been 'served,'" and Facebook has "no current obligation to respond to these requests." *Pathfinder Aviation, Inc. v. XTO Energy Inc.*, No. 15-CV-200, 2016 WL 8290125, at *3 n.26 (D. Ala. Feb. 1, 2016).

7

1  Plaintiff must allege a "certainly impending" "future injury." *Clapper v. Amnesty Int'l USA*, 568 U.S.

2  398, 401–02 (2013).  Here, Plaintiff's only relevant allegation is that "Facebook and Twitter now

3  require that Hart and other users express a government approved viewpoint to use their platforms."

4  Opp. at 13 (quoting Compl. 16 ¶ 63).  That allegation is insufficient.  Unless Plaintiff has provided

5  some "description of concrete plans" to post on Facebook in the future, his injury remains

6  "hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Because the Complaint is

7  entirely devoid of any such description, Plaintiff lacks standing to seek an injunction.

8  Plaintiff argues that he has indeed alleged "future injury" by claiming "negligent interference

9  with a *prospective economic* advantage."  Opp. at 13.  But standing must exist "separately for each

10  form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 185 (2000) (observing that

11  the plaintiff needed to establish standing separately for an injunction and for civil penalties).  Plaintiff

12  fails to allege any future *First Amendment* injury.  His allegations relating to his state law tort claim

13  are entirely beside the point.

14  **C.     Plaintiff's State Law Claims Against Facebook Should Be Dismissed.**

15     **1.     Plaintiff's California constitutional free speech claim should be
           dismissed for lack of state action and for otherwise failing to state
16           a claim.**

17  Plaintiff's California free speech claim fails because Facebook is not a state actor.  Like the

18  federal Constitution, the California Constitution's free speech guarantee applies only to "state action,"

19  with a narrow exception for real property that has been made "freely and openly accessible to the

20  public."  *Bolbol v. Feld Ent., Inc.*, 613 F. App'x 623, 625 (9th Cir. 2015).

21  Although Plaintiff concedes that Facebook does not qualify under this exception (*see* Opp. at

22  14–16), he nonetheless argues that that Facebook is subject to California's free speech clause because

23  it has been declared a "public forum" in unrelated legal contexts.  Opp. at 16.  As an initial matter, this

24  argument "ignores the threshold state action question."  *Manhattan Cmty. Access Corp. v. Halleck*,

25  139 S. Ct. 1921, 1930 (2019) (holding that "when a private entity provides a forum for speech," it is

26  not therefore "a state actor"); *see also Prager Univ. v. Google LLC*, 951 F.3d 991, 998 (9th Cir. 2020)

27

28

8

1    (holding that one "cannot avoid the state action question by calling [a private website] a public

2    forum"). The cases on which Plaintiff relies in support of his California free speech claim (*see* Opp.

3    at 15), are not applicable here as neither analyzes the California free speech clause. The first is

4    *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017), a First Amendment case that struck

5    down North Carolina's statute prohibiting sex offenders from accessing social media websites, *see id.*

6    at 1735. The second is *Daniel v. Wayans*, 8 Cal. App. 5th 367 (2017), which held that public web

7    sites are public forums "for purposes of [California's] anti SLAPP statute," *id.* at 387.

8            All the relevant authority—which Plaintiff conveniently ignores—establishes that his

9    California free speech claim fails as a matter of law. This Court, for example, has squarely held that

10   "claims brought under the California . . . constitution[]" against Facebook "fail because Facebook is

11   not a state actor." *Zimmerman v. Facebook, Inc.*, 2020 WL 5877863, at *2 (N.D. Cal. 2020) (holding

12   that Facebook is not subject to California's free speech clause); *see also Prager Univ. v. Google LLC*,

13   No. 19-CV-340667, 2019 WL 8640569, at *6 (Cal. Super. Ct. Nov. 19, 2019) (neither is YouTube);

14   *Domen*, 433 F. Supp. 3d at 607 (neither is Vimeo); *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d

15   1099, 1116 (N.D. Cal. 2017) (neither is LinkedIn); *Kinderstart.com LLC v. Google, Inc.*, No. 06-CV-

16   2057, 2007 WL 831806, at *16 (N.D. Cal. 2007) (neither is Google). Apart from *Zimmerman,* Plaintiff

17   ignores this controlling authority.  As for *Zimmerman,* Plaintiff attempts to distinguish it on the

18   puzzling ground that it "acknowledged the possibility of joint action in a separate order." Opp. at 16.

19   But in that separate order, *Zimmerman* "acknowledged"—by rejecting as "*insufficient*"—the

20   "argument that Facebook is a state actor because of its joint action with government entities." 2020

21   U.S. Dist. LEXIS 183323, at *6 (N.D. Cal. Oct. 2, 2020) (emphasis added).  If anything, then,

22   *Zimmerman* is *doubly* unhelpful to Plaintiff.  And the other cases go entirely unanswered.[7]

23

24   _____

     [7] Further, Plaintiff waived his entitlement to either damages or an injunction under California's free

25   speech clause. In its motion to dismiss, Facebook argued that California's free speech clause did not
     permit damages for claims that required scrutiny of social and political judgments. *See* Facebook Mot.

26   to Dismiss at 10.  And Facebook argued that Plaintiff lacked standing to seek an injunction. *See id.*
     By "failing to raise it in [his] opposition," Plaintiff has "waived" any argument to the contrary. *Pers.*

27   *Elec. Transps.*, 313 F. App'x at 52.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. Plaintiff's promissory estoppel claim should be dismissed for failure to plead a clear promise or reasonable reliance.

Plaintiff's promissory estoppel claim fails because he fails to plead either a "clear" promise or "reasonable" reliance on it. *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379–81 (9th Cir. 2003). *First,* Plaintiff fails to plead that Facebook made a "clear and unambiguous" promise in its Terms of Service. Opp. at 17. Plaintiff relies on two alleged promises: (1) that Facebook "invited him to connect with other people, build communities, and grow his business," and (2) that it "promised him [it would not] remove false news." Opp. at 17. But these statements—if even "promises" at all—are too indefinite to allow a reviewing court to determine "whether [they] have been breached." *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 226 (2011). The precise definition of "false news," for example, is "of indeterminate application." *Glen Holly*, 352 F.3d at 381. On this point, Plaintiff completely ignores *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 39 (2021), which held that a promise that "Twitter will not 'censor' content" was too "vague" to give rise to a promissory estoppel claim. Plaintiff cannot distinguish his claim from the one dismissed in *Murphy*.

*Second*, Plaintiff has failed to plead that reliance on any such promise was "reasonable." Plaintiff himself acknowledges that Facebook's Terms of Service prohibited him from posting "objectionable material." Opp. at 18. The "breadth . . . of this prohibition" rendered unreasonable any reliance on "vague statements" that Facebook would not moderate his content. *Murphy*, 60 Cal. App. 5th at 39. Because Facebook's Terms of Service broadly and "expressly reserved the right to remove content," Plaintiff "cannot plead reasonable reliance on [any] alleged promises as a matter of law." *Id.* Again, on this point, Plaintiff cannot distinguish *Murphy*.

Plaintiff's reliance was also unreasonable given his prior history of violations of Facebook's Terms of Service, which put him on notice of Facebook's ability to take down posts for violating the Terms. *See* MTD at 11. Plaintiff's puzzling reply is that Facebook's policies have been "constantly shifting," causing him to become "well-versed in its inconsistent and unreasonable application." Opp. at 18. Plaintiff therefore *concedes* that he knew that Facebook took down posts for being

10

"objectionable." *See id.* That concession means that any reliance on a promise not to take down material was, as a matter of law, unreasonable.

> **3.** **Plaintiff's intentional interference with contract claim should be dismissed for failing to plead a valid contract, Facebook's knowledge of it, or intent to interfere.**

Plaintiff's intentional interference with contract claim fails because he has failed to plead "a valid contract," Facebook's "knowledge of this contract," or an "intent[] . . . to induce a breach." *I-CA Enters., Inc. v. Palram Ams., Inc.*, 235 Cal. App. 4th 257, 289 (2015).

For the first element, Plaintiff incorrectly asserts that all he must do to survive a motion to dismiss is to allege the existence of a valid contract, without saying more. *See* Opp. at 20. This is an egregious misstatement of the law. "To plead the claim adequately," Plaintiff must supply "details" about the contract, including the substance of the contract and "the nature and extent of [his] relationship" with the party "with whom [he] contracted." *UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015); see also *In re Centerstone Diamonds, Inc.*, No. 2:13-ap-02040-PC, 2014 WL 1330186, at *6 (C.D. Cal. Apr. 2, 2014) (dismissing an intentional interference with contract claim for failing to plead "the substance and date" of the contract). In short, Plaintiff must plead enough facts that this Court can "determine what contractual rights [he] possessed." *UMG Recordings*, 117 F. Supp. 3d at 1115.[8]

Thus, Plaintiff's conclusory allegation that he "maintains a valid employment contract with Donorbureau, LLC" falls far short. Opp. at 19. Plaintiff nowhere pleads the "substance" of the contract, the "date" on which it was formed, or any details about "the nature and extent of [his] relationship" with Donorbureau. *UMG Recordings*, 117 F. Supp. 3d at 1115 (holding that the allegation that plaintiff had "Airline Contracts" was not sufficiently detailed, "requir[ing] dismissal").

---

[8] Plaintiff argues that *United National Maintenance, Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1009 (9th Cir. 2014) does not state the correct standard because it was an appeal from a jury trial. Opp. at 20. But the court in *United National Maintenance* required a new trial after finding error *as a matter of law*. Accordingly, the case provides an accurate statement of the law, including on motion to dismiss. *See UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015) (quoting *United National*, 766 F.3d at 1009) (applying *United National Maintenance* and dismissing a claim at the motion-to-dismiss stage).

1    And Plaintiff does not even attempt to argue otherwise. *See* Opp. at 19–20. Accordingly, Plaintiff

2    has simply failed to plead a valid contract, of any kind, which requires dismissal of his intentional

3    interference claim.

4         As to Facebook's purported knowledge, Plaintiff has also failed to plead the necessary facts.

5    Once more, Plaintiff relies only on a conclusory allegation: that Facebook "ha[d] actual notice that

6    Hart serves as an Administrator for the Donorbureau [Facebook] account." Compl. 19 ¶ 93. While

7    Plaintiff argues that this bare allegation "is sufficient" to survive a motion to dismiss (*see* Opp. at 20),

8    courts have expressly held that it is not "sufficient to generally allege that Defendant knew about

9    Plaintiff's contracts." *Royal Holdings Techs. Corp. v. FLIR Sys., Inc.*, No. 20-CV-9015, 2021 WL

10   945246, at *5 (C.D. Cal. Jan. 8, 2021) (holding that the allegation that plaintiff "knew of the existence

11   of the valid and enforceable customer agreements" did not sufficiently plead knowledge). Rather,

12   Plaintiff "must allege enough detail to demonstrate [that Facebook had the] requisite knowledge . . .

13   of the *specific contract terms at issue*." *Id.* (emphasis added) (citing *Winchester Mystery House, LLC*

14   *v. Glob. Asylum, Inc.*, 210 Cal. App. 4th 579, 596–97 (2012)). Here, Plaintiff has failed even to plead

15   "specific . . . contract terms," which necessarily means that he has failed to plead Facebook's

16   knowledge of those specific terms. *Id.* Thus, Plaintiff has failed to plead the element of knowledge.

17        Finally, for similar reasons, Plaintiff has failed to plead the necessary intent to interfere.

18   Plaintiff "must allege enough detail to demonstrate the requisite . . . intent," which requires pleading

19   that Facebook had "knowledge of the specific contract terms at issue." *Id.*; *see Davis v. Nadrich*, 174

20   Cal. App. 4th 1, 10–11 (2009) (observing that a defendant must be "aware of the details of [a contract]

21   to form an intent to harm it"). Again, Plaintiff has not pleaded knowledge. And without pleading

22   Facebook's "knowledge of the specific contract terms at issue," Plaintiff cannot allege that Facebook

23   had "an intent to harm [the contract]." *Royal Holdings*, 2021 WL 945246, at *5.

12

1

2

> **4.    Plaintiff's negligent interference with prospective economic advantage claim should be dismissed for failing to plead a prospective economic advantage.**

3

California has "long refused to recognize" the tort of negligent interference with contract.

4

*Prof. Bus. Bank v. FDIC*, No. 10-CV-4614, 2011 WL 13109254, at *12 (C.D. Cal. Oct. 4, 2011).

5

Plaintiff attempts to avoid this problem by calling his claim one for negligent interference with

6

*prospective economic advantage*.  But he admits that the only such possible advantage is the

7

"probability of future economic benefit if he successfully fulfills the terms of his Donorbureau

8

contract."  Opp. at 21.  Under California law, that is not a viable claim.  "Because [his] opportunity

9

exists solely by virtue of [a contract], [Plaintiff] cannot plausibly characterize [his] claim . . . as one

10

of interference with prospective economic advantage, as opposed to contractual relations."  *Prof.*

11

*Bus. Bank*, 2011 WL 13109254, at *12 ("To do so would be to blur, if not eliminate, the line

12

between the two causes of action.").  Thus, Plaintiff has pleaded a cause of action that does not exist.

13

> **D.    The State Law Claims Should Independently Be Struck Under California's Anti-SLAPP Statute.**

14

Independently, Plaintiff's state law claims should be struck under California's anti-SLAPP

15

statute.  The anti-SLAPP statute applies if the defendant can make a *prima facie* showing that

16

plaintiff's state law claims arise from the defendant's protected activity.  *Sarver v. Chartier*, 813 F.3d

17

891, 902 (9th Cir. 2016).  If so, the state law claims are struck if the plaintiff fails to demonstrate that

18

they are legally sufficient, under the familiar Rule 12(b)(6) standard.  See *Planned Parenthood Fed'n*

19

*of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 835 (9th Cir. 2018).  A successful motion would

20

entitle Facebook to attorney's fees.  *See id*. at 834.

21

Plaintiff's first argument is, bizarrely, to argue that California's anti-SLAPP statute does not

22

apply in federal court.  *See* Opp. at 29–31.  But the Ninth Circuit has explicitly and repeatedly held to

23

the contrary.  *See Planned Parenthood,*, 890 F.3d at 833–35 (holding that the anti-SLAPP statute

24

applies because there was no conflict with the Federal Rules); *United States ex rel. Newsham v.*

25

26

27

28

1   *Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (same).[9]  California's anti-SLAPP

2   statute plainly applies.

3           First, Facebook has established that its claims arise out of "protected activity."  *See* MTD at

4   18.  As courts have repeatedly affirmed, content moderation decisions are a "quintessential way to

5   facilitate [free speech] rights" under the meaning of the anti-SLAPP statute.  *Hupp v. Freedom

6   Commc'ns, Inc.*, 221 Cal. App. 4th 398, 405 (2013); *see also  Greater L.A. Agency of Deafness, Inc.

7   v. CNN*, 742 F.3d 414, 424–25 (9th Cir. 2014) ("[W]here, as here, an action directly targets the way a

8   content provider chooses to *deliver, present, or publish* news content on matters of public interest, that

9   action is based on conduct in furtherance of free speech rights and must withstand scrutiny under

10  California's anti-SLAPP  statute." (emphasis added)).    Plaintiff  disagrees,  arguing  that  only

11  Facebook's own speech can trigger the protection of the anti-SLAPP statute.  Opp. at 36.  In support,

12  Plaintiff cites only two cases, both arising in the unrelated context of hiring, firing, and disciplining

13  employees.  *See* Opp. at 35–36.  Curiously, Plaintiff completely ignores—and cannot distinguish—an

14  on-point decision, *Hupp*, which held that an online newspaper's "[m]aintaining a [website] for

15  [others'] discussion of issues of public interest [was] a quintessential way to facilitate [speech] rights"

16  under the anti-SLAPP statute.  221 Cal. App. 4th at 405.  *Hupp* compels the same conclusion here.

17          Second, under the anti-SLAPP statute, Plaintiff's claims should be struck.  When the challenge

18  is to the legal sufficiency of the complaint, the anti-SLAPP standard is "the same" as the Rule 12(b)(6)

19  standard.  *Planned Parenthood*, 890 F.3d at 834.  Thus, for all the same reasons that Plaintiff's claims

20  should be dismissed, they should also be struck.  *See* Sections I–III, *supra*.

21                        **E.      Plaintiff Should Not Be Granted Leave To Amend.**

22          Plaintiff should not be granted leave to amend for three independent reasons.  *First*, Plaintiff

23  has waived any objection to dismissal under Section 230(c)(1)—and when a claim is dismissed under

24  Section 230, leave to amend is always improper because "it would be futile for [Plaintiff] to try to

25  _____

26  [9] Plaintiff relies heavily on a Second Circuit case, *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020),
    which declined to "follow the Ninth Circuit" by holding that the California anti–SLAPP statute did
27  not apply in federal court, *id.*  Facebook urges this Court to "follow the Ninth Circuit."

            14

amend the claim." *King v. Facebook Inc.*, No. 21-CV-4573-EMC, 2021 WL 5279823, at *13 (N.D. Cal. Nov. 12, 2021); *see Brittain v. Twitter, Inc.*, No. 19-cv-00114-YGR, 2019 WL 2423375, at *4 (N.D. Cal. June 10, 2019) (dismissing claims barred by Section 230(c)(1) with prejudice "[b]ecause plaintiff cannot cure this defect").

*Second*, leave to amend is improper for claims struck under California's anti-SLAPP statute. The purpose of the anti-SLAPP statute is "to provide for a speedy resolution of claims which impinge on speech protected by the First Amendment," which means that "leave to amend is not necessary or appropriate." *Smith v. Santa Rosa Democrat*, No. C 11-02411 SI, 2011 WL 5006463, at *7 (N.D. Cal. Oct. 20, 2011); see also *Flores v. Emerich & Fike*, No. 1:05-cv-0291 OWW DLB, 2006 WL 2536615, at *10 (E.D. Cal. Aug. 31, 2006) ("To allow amendment after an anti-SLAPP motion to strike has been granted eviscerates the purpose of the anti-SLAPP statute.").

*Third*, the defects in Plaintiff's claims could not "possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Plaintiff's First Amendment and California free speech claims require him to plead state action, and he cannot. The promissory estoppel claim is defective as a matter of law because vague statements from Facebook's Terms of Service cannot be the basis for liability. *See Murphy*, 60 Cal. App. 5th at 40. Further, Plaintiff's concession that he was "well-versed" with Facebook's practice of removing content for being "objectionable" renders any reliance unreasonable as a matter of law. Opp. at 18. The negligent interference with a prospective economic advantage claim cannot be saved because Plaintiff's only prospective economic advantages were contractual, which cannot give rise to liability as a matter of law. *Cf. Prof. Bus. Bank*, 2011 WL 13109254.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Facebook respectfully requests that the Court dismiss or strike the Complaint with prejudice.

15

1  Dated:  May 2, 2022                                    ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3

4                                                          By: */s/ Jacob M. Heath*
                                                                JACOB M. HEATH

5                                                          Attorney for Defendant FACEBOOK, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16