BRIAN NETTER
Deputy Assistant Attorney General
STEPHANIE HINDS
United States Attorney
ERIC BECKENHAUER
Assistant Director, Federal Programs Branch
KUNTAL CHOLERA
Trial Counsel
U.S. Department of Justice

Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.:    (202) 305-8645
Fax:    (202) 616-8470
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

JUSTIN HART,

        Plaintiff,

v.

FACEBOOK, INC., *et al.*,

        Defendants.

No.  3:22-cv-00737-CRB

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

Introduction ............................................................................................................................. 1

Argument .................................................................................................................................. 3

    I.    Plaintiff lacks standing to seek injunctive relief.......................................................... 3

    II.    Plaintiff has failed to state a plausible First Amendment claim. ................................ 8

        A.    Plaintiff fails to show coercion or a similar degree of significant
            encouragement. ................................................................................................ 9

        B.    Plaintiff fails to show that the Federal Defendants dictated
            Facebook's or Twitter's actions against Plaintiff............................................. 11

Conclusion .............................................................................................................................. 14

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Abcarian v. Levine,*
   972 F.3d 1019 (9th Cir. 2020) ................................................................. 5, 6

4

*Association of American Physicians & Surgeons, Inc. ("AAPS") v. Schiff,*
   518 F. Supp. 3d 505 (D.D.C. 2021) .......................................................... 5, 7

5

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.,*
   727 F.3d 917 (9th Cir. 2013) ...................................................................... 13

6

7

*Blum v. Yaretsky,*
   457 U.S. 991 (1982) ........................................................................ 8, 11, 12

8

*Chavez v. United States,*
   683 F.3d 1102 (9th Cir. 2012) .................................................................... 13

9

10

*Children's Health Defense v. Facebook,*
   546 F. Supp. 3d 909 (N.D. Cal. 2021) ........................................................ 12

11

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ..................................................................................... 4

12

13

*Dennis v. Sparks,*
   449 U.S. 24 (1980) ........................................................................................ 8

14

*Florer v. Congregation Pidyon Shevuyim, N.A.,*
   639 F.3d 916 (9th Cir. 2011) ...................................................................... 10

15

16

*Franklin v. Fox,*
   312 F.3d 423 (9th Cir. 2002) ................................................................. 8, 10

17

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) .................................................................................... 14

18

19

*Idaho Conservation League v. Mumma,*
   956 F.2d 1508 (9th Cir. 1992) ...................................................................... 4

20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................... 13

21

22

*Lugar v. Edmondson Oil Co.,*
   457 U.S. 922 (1982) ............................................................................. 10, 11

23

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ...................................................................................... 3

24

25

*Mathis v. Pac. Gas & Elec. Co.,*
   75 F.3d 498 (9th Cir. 1996) .................................................................... 8, 11

26

*Nat'l Endowment for the Arts v. Finley,*
   524 U.S. 569 (1998) ...................................................................................... 9

27

28

ii

*Phiffer v. Proud Parrot Motor Hotel, Inc.*,
    648 F.2d 548 (9th Cir. 1980) ........................................................................................... 4

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982)........................................................................................................ 8

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)........................................................................................................ 3

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)........................................................................................................ 3

**Other Authorities**

Press Briefing by Press Secretary Jen Psaki,
    https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/16/press-briefing-by-
    press-secretary-jen-psaki-july-16-2021, 22 (July 16, 2021)........................................ 13

### INTRODUCTION

Plaintiff has been suspended from Facebook and Twitter—two *private* social media platforms—for violating health misinformation policies that each platform has had in place, in some form, since early 2020. Nevertheless, Plaintiff argues that the decisions Facebook and Twitter made with respect to him are attributable to the federal government based on a non-binding July 2021 Surgeon General health advisory (the "Advisory") and a few comments that other federal officials made in mid-2021 about the importance of addressing misinformation. Plaintiff asserts that the Advisory and comments they reference—which speak of misinformation in general terms and impose no obligation on any party—somehow convert the relevant decisions of Facebook and Twitter into "state actions" that violate the First Amendment. Plaintiff's claim lacks merit.

To start, Plaintiff lacks standing. First, Plaintiff fails to establish a "certainly impending" injury. Although he alleges that he has previously made posts on Facebook and Twitter that resulted in his suspension from those platforms, he does not allege that he intends to again make posts that will "certainly" result in his suspension. Second, even if Plaintiff had alleged some impending injury, he cannot show that that injury will be caused by the Surgeon General Vivek Murthy, President Biden, and the Department of Health and Human Services (the "Federal Defendants"). There are several reasons why Facebook and Twitter would independently decide to take action against misinformation on their platforms. They may genuinely believe that misinformation is harmful and that they have an obligation to address it, or they may believe that their users will flock to other platforms if they believe Facebook and Twitter have become inundated with misinformation. Indeed, the relevant timeline confirms that Facebook and Twitter concluded that they should take action against misinformation independently of anything the Federal Defendants had said or done. Plaintiff does not dispute that both Facebook and Twitter adopted health misinformation policies in early 2020, before the current Administration even began. Indeed, Plaintiff himself alleges that Facebook took action against one of his posts in September 2020 on the ground that it contained health misinformation. Thus, Plaintiff cannot show that any actions Facebook and Twitter may take against Plaintiff stems, not from the platforms' longstanding

misinformation practices, but rather from a non-binding advisory issued by the Surgeon General and stray comments from other officials.

Third, Plaintiff does not address the argument that even if he could establish a "certainly impending" injury causally tied to the Federal Defendants, he fails to show that a favorable ruling would redress that injury. There is no indication that Facebook and Twitter would abandon their long-standing misinformation practices if the Surgeon General, and certain other government officials, were enjoined from making public statements concerning the importance of addressing misinformation. Accordingly, Plaintiff lacks standing, and the Court may dismiss his First Amendment claim for this reason alone.

Further, Plaintiff's First Amendment claim also fails on the merits. To show that Defendants are responsible for the adverse actions Facebook and Twitter—two private companies—took against him, Plaintiff must show that the Federal Defendants coerced, or effectively coerced, Facebook and Twitter to take those precise adverse actions. He must do more than show that the Federal Defendants promoted certain strategies for targeting misinformation; he must show that the Federal Defendants specifically directed Facebook and Twitter to target *him* in particular, or that the Federal Defendants supplied a definition of "misinformation" that necessarily encompassed his social media posts. Plaintiff, however, shows neither. He instead relies on a conclusory allegation that the Federal Defendants directed Facebook and Twitter to specifically target him, but fails to provide any factual support indicating that the Federal Defendants were even aware of him (one social media user among hundreds of millions). And while Plaintiff asserts that the Federal Defendants encouraged Facebook and Twitter to target "misinformation superspreaders," he does not allege that the Federal Defendants ever defined that term in a manner that necessarily included him.

But even if Plaintiff could establish that the Federal Defendants directed Facebook and Twitter to target him in particular, he fails to show that the Federal Defendants specifically directed Facebook or Twitter to take any particular *remedial action* against him. To the contrary, the Surgeon General's Advisory proposes several strategies social media companies could consider for

Fed. Defs.' Motion to Dismiss Reply
No. 3:22-cv-00737-CRB

addressing misinformation, many of which fall short of deleting posts or suspending users (*e.g.*, simply promoting useful information or labeling misinformation). Thus, under the relevant standard, the actions taken by Facebook and Twitter against Plaintiff are not attributable to the Federal Defendants. The Court should grant the Federal Defendants' Motion to Dismiss.

ARGUMENT

## I.    Plaintiff lacks standing to seek injunctive relief.

To establish standing to "seek injunctive relief, a plaintiff must show that" it "is under threat of suffering" an "actual and imminent" injury caused by "the challenged action," and that "a favorable judicial decision will prevent" that injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). The "threatened injury must be certainly impending to constitute injury in fact"; allegations of "possible future injury do not satisfy . . . Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis added). In addition, where, as here, "the plaintiff is not [himself] the object of [a] government action," standing "is ordinarily 'substantially more difficult' to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). Plaintiff cannot show that any of these standing requirements is met here.

Injury. Plaintiff has failed to allege any "certainly impending" injury. Although he alleges that he previously made posts that caused Facebook and Twitter to suspend him from their platforms, he does not allege that he intends to again make posts that will "certainly" result in any suspension. The Federal Defendants raised this argument in their motion to dismiss, *see* Fed. Defs.' MTD at 12, and Plaintiff did not dispute it. *See Silva v. City of San Leandro*, 744 F. Supp. 2d 1036, 1050 (N.D. Cal. 2010) ("Plaintiffs do not address this argument in their Opposition brief, implicitly conceding that these claims fail."); *Roy v. Contra Costa Cty.*, No. 15-CV-02672-TEH, 2015 WL 5698743, at *3 (N.D. Cal. Sept. 29, 2015) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quoting *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)). Plaintiff instead argues only that his alleged injury is "ongoing" because "Facebook and Twitter now require that Hart and other

Fed. Defs.' Motion to Dismiss Reply
No. 3:22-cv-00737-CRB

users express a government-approved viewpoint to use their platforms." Pl.'s Resp. at 13. Plaintiff appears to argue only that he cannot make certain posts on Facebook and Twitter, but he does not allege that he intends to make those types of posts again. And to the extent Plaintiff is arguing that he is voluntarily refraining from making those posts, that would be the type of "self-inflicted injur[y]" that is insufficient to establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). Thus, Plaintiff has failed to establish a "certainly impending" injury necessary for standing.

  <u>Causation.</u> Even if Plaintiff could establish a prospective injury, he cannot show that that injury—or any prior injury he suffered—will be (or was) caused by the Federal Defendants. To satisfy the causation requirement, a plaintiff must show that his "injury . . . is dependent upon [the defendant's] policy" rather than "the result of independent incentives governing [other parties'] decisionmaking process[es]." *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1517-18 (9th Cir. 1992). The Ninth Circuit has described the Article III causation requirement as a "'but for' causation" requirement. *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 552 (9th Cir. 1980).

  Here, Plaintiff's allegations fail to show that any action Facebook and Twitter may take, or have taken, against Plaintiff will be, or were, caused by the Federal Defendants rather than the independent judgment of Facebook and Twitter. As the Federal Defendants argued, and Plaintiff did not dispute, Facebook and Twitter have many independent reasons for policing against misinformation on their platforms. *See* Fed. Defs.' MTD at 12-13. Those platforms, for example, may genuinely believe that misinformation is harmful and that they have a responsibility to address it, or they may believe that their users may migrate to other platforms if Facebook and Twitter are inundated with false information. In fact, both Facebook and Twitter began taking action against COVID-related misinformation *before* the current Administration even began, confirming that they independently decided that they should take action against misinformation on their platforms. *See* Fed. Defs.' MTD at 4-6. Plaintiff himself alleges that, in February 2020, Facebook was taking action against posts that, in its view, contained health misinformation. *See* Compl. (Facts) ¶ 40 (alleging that, "in February 2020, Facebook announced it would remove posts that suggested the

virus was man-made" because it then believed "the theory had been debunked" based on the findings of "public health officials"). And public statements from both Facebook and Twitter—which the Court may consider in resolving a Rule 12(b)(1) motion[1]—confirm that, in early 2020, both platforms had policies in place for removing posts that contain COVID-related misinformation. *See* Fed. Defs.' MTD at 4-6.

The Complaint falls well short of showing that any action Facebook or Twitter may take, or have taken, against Plaintiff will be (or was) caused by the Federal Defendants rather than those platforms' pre-existing anti-misinformation practices. To the contrary, the Complaint indicates that Facebook notified Plaintiff in September 2020—again, before the current Administration began—that a post by Plaintiff contained impermissible misinformation, thus undermining any inference of a causal link. *See* Compl. (Facts) ¶ 35 (alleging that "[o]n or around September 15, 2020, Facebook issued [Plaintiff] a warning regarding a post he had made in July 2020," and that "the warning claimed, 'False information about COVID-19 found in your post'"). This case is similar to *Association of American Physicians & Surgeons, Inc. ("AAPS") v. Schiff*, 23 F.4th 1028 (D.C. Cir. 2022). There, the plaintiffs brought a First Amendment claim, alleging that certain "social media sites" took "adverse action[s] against the [plaintiffs'] content" because of statements from "Representative Schiff[] . . . which [plaintiffs] view[ed] to have implicitly threatened and coerced the technology companies." *Id.* at 1033. The D.C. Circuit found, among other things, that the plaintiffs failed to establish a causal link between Congressman Schiff and the relevant actions taken against the plaintiffs' social media content because (i) "the technology companies may have taken those actions for any number of reasons unrelated to Representative Schiff," and (ii) "[t]he timeline of events in the . . . complaint . . . undermines any possibility that the companies acted at Representative Schiff's behest" because "Facebook announced its new policy of prioritizing government-sponsored vaccine information in search results in March 2019 . . . and Twitter introduced its search-results disclaimer directing users to government-sponsored vaccine

---

[1] *See Abcarian v. Levine*, 972 F.3d 1019, 1029 n.6 (9th Cir. 2020) (courts must "consider[] not just the complaint, but also the evidence submitted by the parties in connection with [a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)").

Fed. Defs.' Motion to Dismiss Reply
No. 3:22-cv-00737-CRB

1    information in May 2019," both of which "occurred before Representative Schiff" made the

2    statements at issue. *Id.* at 1034. Both of those rationales apply equally here.[2]

3        In an attempt to establish causation, Plaintiff first argues that Defendants' causation

4    arguments rely on external materials the Court cannot consider on a motion to dismiss. But it is

5    well established that the Court may consider external evidence when resolving a Rule 12(b)(1)

6    motion. *See supra* at 5 n.1. Thus, the Court can consider the publications from Facebook and

7    Twitter which show that they both had health misinformation policies in place in early 2020. *See*

8    Fed. Defs.' MTD at 4-6. But even without them, Plaintiff has failed to establish the requisite causal

9    link. For one thing, the Complaint, on its face, lacks sufficient factual matter suggesting that any

10   adverse actions Facebook or Twitter have taken or may take against Plaintiff were driven by the

11   Federal Defendants rather than by the platforms' independent business judgments. *See supra* at 4-

12   5. Furthermore, other sources, including Plaintiff's own allegations and sources of which the Court

13   may indisputably take judicial notice (*e.g.*, Congressional testimony), show that the companies

14   acted independently. *See* Fed. Defs.' MTD at 13.

15       Plaintiff also argues that, even if Facebook and Twitter have long policed against health

16   misinformation on their platforms, the Surgeon General called on them to do more. But this raises

17   the same causation issue: the Complaint contains no well-pled allegation indicating that the actions

18   Facebook and Twitter have taken, and may again take, against Plaintiff stem from the Surgeon

19   General's hope that social media companies would "do more," rather than from the platforms'

20   independent choices to do so, consistent with their longstanding efforts to combat misinformation.

21   Relatedly, Plaintiff asserts that Facebook is "following the federal government's instructions on

22   whom to censor," citing a news report that, after President Biden "asked the Intelligence

23   Community to redouble their efforts to collect and analyze information that could bring us closer

24

---

25   [2] Plaintiff attempts to distinguish *AAPS* by arguing that Congressman Schiff has comparatively less
26   power than the Federal Defendants here. But the D.C. Circuit's decision rested on a number of
     factors unrelated to Congressman Schiff's influence. As noted above, the D.C. Circuit mentioned
27   that social media companies have independent reasons for policing against misinformation, and
     they took action against misinformation before Congressman Schiff made the statements at issue
28   there. Those factors apply to the case at bar as well. *See supra* at 4-5.

Fed. Defs.' Motion to Dismiss Reply
No. 3:22-cv-00737-CRB

to a definitive conclusion" about "the origins of COVID-19,"[3] Facebook allegedly stopped treating claims that the virus is man-made as "misinformation." *See* Pl.'s Resp. at 11. But nothing in that sequence of events suggests any federal "instruction" that Facebook felt bound to follow, as opposed to the company's independent judgment about what information to allow on its platform— much less that Facebook and Twitter took disciplinary action against *Plaintiff's* posts because of the Federal Defendants.

Plaintiff also hypothesizes that the Federal Defendants must have started promoting anti-misinformation strategies before the Surgeon General issued the Advisory on July 15, 2021. The Complaint contains no well-pled allegation supporting such speculation, but regardless, Facebook and Twitter began taking action against health misinformation since before the current Administration began, and so the former could not have caused the latter. Plaintiff finally argues that he is unable to establish causation only because the Federal Defendants would not provide him with documents that he requested through a Freedom of Information Act request issued to the Office of Management and Budget ("OMB"). *See* Pl.'s Resp. at 7-8.  Plaintiff fails to explain how documents from OMB would remedy his standing defects against the federal government defendants that have moved to dismiss his First Amendment claim: President Biden, Surgeon General Murthy, and the Department of Health and Human Services. Regardless, Plaintiff's speculation about the existence of documents that he believes could support his case does not relieve him of the burden of establishing standing. *See In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1005 (N.D. Cal. 2020) ("Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing the existence of Article III standing and, at the pleading stage, must clearly allege facts demonstrating each element."); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss" and can "unlock the doors of discovery").

---

[3] Statement by President Joe Biden on the Investigation into the Origins of COVID-19 (May 26, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/05/26/statement-by-president-joe-biden-on-the-investigation-into-the-origins-of-covid-19.

Fed. Defs.' Motion to Dismiss Reply
No. 3:22-cv-00737-CRB

1    Accordingly, Plaintiff has failed to establish a causal link between any of his alleged injuries

2    and the Federal Defendants.

3    <u>Redressability.</u> Plaintiff does not even address the Federal Governments' redressability

4    argument. Even if the Court, as Plaintiff requests, "[e]njoin[s] Murthy and Biden from [allegedly]

5    directing social media companies to censor information with which Murthy and Biden disagree,"

6    Compl. at 22 ¶ B, Facebook and Twitter would in all likelihood still *independently* conclude that it

7    is in their interest to continue taking action against misinformation on their platforms—which

8    would be entirely in keeping with their position since early 2020. Thus, Plaintiff cannot show that

9    the equitable relief he seeks would redress his alleged injuries.

10   Again, *AAPS* is instructive. The district court in that case found that the plaintiffs lacked

11   standing not only because they failed to establish causation, but also because "[i]t [was] pure

12   speculation that any order directed at Congressman Schiff . . . would result in the [technology]

13   companies changing their behavior" towards the plaintiffs. *AAPS v. Schiff*, 518 F. Supp. 3d 505,

14   516 (D.D.C. 2021). The court stressed that it was "not plausible" that Facebook or Twitter would

15   suddenly "revise their policies on medical misinformation" as a result of an injunction restraining

16   Congressman Schiff's activities. *Id.* So too here.

17   Plaintiff therefore cannot establish any of the requirements for standing—injury, causation,

18   and redressability—and the Court may dismiss Plaintiff's First Amendment claim against the

19   Federal Defendants for that reason alone.

**II.    Plaintiff has failed to state a plausible First Amendment claim.**

21   Even if Plaintiff could establish standing, he has failed to state a viable First Amendment

22   claim because he cannot show that the actions that were, or may be, taken by Facebook and Twitter

23   against Plaintiff are attributable to the Federal Defendants. A plaintiff may establish a First

24   Amendment claim based on private conduct only if it "can fairly be seen as state action." *Rendell-*

25   *Baker v. Kohn*, 457 U.S. 830, 838 (1982). Where, as here, a plaintiff claims he was injured by

26   conduct carried out solely by a private party, the plaintiff can show that the government is

27   "responsible for [the] private decision only when it has exercised coercive power or has provided

28

8

such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the" government. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The plaintiff must also show that the government called on the private party to take the *precise action* at issue—*i.e.*, by "dictat[ing] the decision" made "in [that] particular case," *id.* at 1010, or insisting that the private party follow a "standard that would have *required*" that action, *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996) (emphasis added). It is not enough to show that the government recommended a general policy under which the private party retained discretion over whether to take the particular action at issue. *Mathis*, 75 F.3d at 502 ("It wasn't enough to show that [the private party]" was driven by "a generalized federal concern" or "standards [that] would have required" action "on some materially different set of facts.").

Courts rarely find that private conduct is attributable to the government. *See Mathis*, 75 F.3d at 501 ("While [courts] sometimes treat acts of private parties as public, [they] do so sparingly."); *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) (courts must "start with the presumption that conduct by private actors is not state action"). Plaintiff cannot meet this demanding test here.

**A. Plaintiff fails to show coercion or a similar degree of significant encouragement.**

To show that the Federal Defendants are responsible for the actions of Facebook and Twitter, Plaintiff refers to the Advisory, which provides recommendations that persons and organizations (including social media companies) can follow if they wish, and a handful of stray remarks by White House officials suggesting that social media companies should address misinformation on their platforms. But none of those allegations establishes "coercion," or a level of "encouragement" that approximates coercion. For one, the Advisory is just that, an advisory; it provides only recommendations, and does not require that any party take any action. The referenced comments by government officials are likewise unremarkable. It is common for government officials to make public statements on policy issues. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 598 (1998) (Scalia, J. concurring) ("It is the very business of government to favor and disfavor points of view on . . . innumerable subjects"). If that alone constituted "coercion," or

Fed. Defs.' Motion to Dismiss Reply
No. 3:22-cv-00737-CRB

a level of "encouragement" resembling coercion, then many forms of private conduct would transform into "state action" anytime a government official delivered a speech; *e.g.*, a private establishment's decision to disallow firearms on its premises could constitute "state action" if a government official had recently delivered a speech on gun control. Thus, neither the Advisory nor any of the alleged statements from government officials constitutes "coercive power or . . . such significant encouragement" to approach it.

In response, Plaintiff first argues that White House officials were in contact with social media companies to "flag[] problematic posts." Pl.'s Resp. at 3. But Plaintiff offers nothing to suggest that any such communications were coercive. And he cites no case suggesting that when White House officials communicate a particular view—again, a routine practice for government officials—that somehow converts private conduct into "state action." Plaintiff also argues that the President "publicly sham[ed]" social media companies by making a statement concerning the harms of misinformation on social media platforms. *See* Pl.'s Resp. at 4. But Plaintiff refers only to a single, discrete statement by the President, *see id.*, and cites to no case indicating that this type of fleeting comment constitutes "coercion" or its equivalent. Nor does the Complaint contain any factual matter suggesting that Facebook or Twitter believed they were compelled to act in response to the President's comment.

Plaintiff then argues that social media companies are vulnerable to pressure by government officials because they are "highly regulated" and subject to "ongoing antitrust investigations." *Id*. But Plaintiff does not allege that any government official actually threatened any regulation, or any antitrust action, if social media companies did not amplify their anti-misinformation efforts. And given the market dominance of Facebook and Twitter, it is difficult to imagine that they were cowed by the mere recommendations at issue here.

Plaintiff finally argues that he is also advancing a "joint action" theory in addition to his "coercion" theory. But for a "joint action" theory, Plaintiff must allege that the government actually engaged in the precise action that allegedly deprived Plaintiff of his First Amendment right: the alleged suspension of his Facebook and Twitter accounts due to certain posts he made. *See Lugar*

Fed. Defs.' Motion to Dismiss Reply
No. 3:22-cv-00737-CRB

1    *v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (for a joint-action theory, the "[p]rivate persons"

2    must be "jointly engaged with state officials *in the prohibited action*." (emphasis added)); *Franklin*

3    *v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (under the joint action test, courts examine whether state

4    officials and private parties have acted in concert in effecting *a particular deprivation of*

5    *constitutional rights*" with "the goal of violating a plaintiff's constitutional rights" (emphasis

6    added)). Thus, in *Lugar*, for example, the government was considered a "joint actor" in the alleged

7    deprivation of property because a private party seized the property only by securing a "writ of

8    attachment, which was then executed by the County Sheriff." 457 U.S. at 924-25, 942. Here, there

9    is no allegation that any Federal Defendant was (or even could be) directly involved in the act of

10   suspending Plaintiff from Facebook or Twitter.

11           Accordingly, Plaintiff's allegations do not demonstrate that the Federal Defendants

12   coerced, or effectively coerced, either Facebook or Twitter.

13   **B.  Plaintiff fails to show that the Federal Defendants dictated Facebook's or Twitter's actions against Plaintiff.**

14           Even if Plaintiff had alleged sufficient factual material to show that a Federal Defendant

15   coerced or effectively coerced Facebook and Twitter to take action against misinformation on their

16   platforms, Plaintiff's claim would still fail because the Complaint fails to establish that Federal

17   Defendants dictated the precise actions at issue here—*i.e.*, by specifically instructing Facebook or

18   Twitter to take action against *Plaintiff* due to his posts, or by imposing a definition of

19   "misinformation" that would *necessarily* encompass any of Plaintiff's posts.[4] To the contrary, as

20   _____

21   [4] This specificity requirement applies even if Plaintiff is asserting a "joint action" theory—*i.e.*,
     that the Federal Defendants, Facebook, and Twitter, jointly took action against Plaintiff—in

22   addition to a "coercion" theory. *See* Pl.'s Resp. at 3-4. However Plaintiff frames his "state action"
     theory, he must show that the Federal Defendants have dictated, or were (or will be) directly

23   involved in, the precise actions that Facebook and Twitter have taken or will take against

24   Plaintiff. *See*, *e.g.*, *Mathis*, 75 F.3d at 504 n.4 (9th Cir. 1996) ("Under a joint action theory,
     however, the issue" is "whether the private person was jointly engaged with state officials *in the*

25   *prohibited action*." (emphasis added)); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (private
     conduct may constitute "state action" if "[p]rivate persons" are "jointly engaged with state

26   officials *in the challenged action*" (emphasis added)); *Franklin*, 312 F.3d at 445 ("Under the joint
     action test, courts examine whether state officials and private parties have acted in concert in

27   effecting *a particular deprivation of constitutional rights*," and the "private defendant must share

28   with the public entity the goal of violating a plaintiff's constitutional rights." (emphasis added)).

11

Fed. Defs.' Motion to Dismiss Reply
No. 3:22-cv-00737-CRB

discussed in the Federal Defendants' opening brief, the Surgeon General acknowledged that there was no concrete definition of "misinformation," and the White House Press Secretary repeatedly clarified that social media companies must make the ultimate decision over how they will address misinformation. *See* Fed. Defs.' MTD at 8-9. The Federal Defendants thus, at most, expressed "a generalized federal concern" concerning misinformation, *Mathis*, 75 F.3d at 502, leaving Facebook's and Twitter's editorial discretion over their platforms undisturbed. Facebook and Twitter therefore necessarily exercised their independent judgment to conclude that certain of Plaintiff's posts contained misinformation, and that remedial measures were appropriate. Those actions are not attributable to the Federal Defendants.

Plaintiff does not even address *Blum v. Yaretsky*, which supports the Federal Defendants' position. 457 U.S. 991 (1982). There, a regulation required nursing homes to transfer patients to lower cost facilities if a higher cost facility was not "medically necessary." *See id.* at 994, 1008. The Supreme Court held that even though the nursing homes were required, by law, to transfer certain patients, those transfers were not attributable to the government because the nursing home doctors—private parties—had to make the factual determination of whether a higher cost facility was "medically necessary" (and thus whether a transfer was required). *Id.* at 1006-08. The government thus did not "dictate the decision to . . . transfer in" any "particular case." *Id.* at 1010. Here, similarly, even if Plaintiff could show that the Federal Defendants coerced Facebook and Twitter to take action against those spreading "misinformation," whether any particular post contained "misinformation" would ultimately remain for the companies to decide.

Judge Illston recently dismissed a nearly identical suit for precisely this reason. In *Children's Health Defense v. Facebook*, the plaintiff asserted a First Amendment claim based on its allegation that Congressman Schiff and the Centers for Disease Control ("CDC") encouraged Facebook to "censor [the plaintiff's] vaccine safety speech." 546 F. Supp. 3d 909, 915 (N.D. Cal. 2021). In particular, the plaintiff alleged that Congressman Schiff "urge[d] that Facebook . . . censor and remove all so-called 'vaccine misinformation,'" and that the CDC "work[ed] with 'social media partners,'" including Facebook, "in its 'Vaccine with Confidence' initiative." *Id.* at *2-4. The court,

12

Fed. Defs.' Motion to Dismiss Reply
No. 3:22-cv-00737-CRB

however, found that neither Congressman Schiff nor the CDC was responsible for the disciplinary actions Facebook took against the plaintiff because "the phrase 'vaccine misinformation' is a general one that could encompass many different types of speech and information about vaccines," and thus the "general statements" by Congressman Schiff and the CDC concerning "vaccine misinformation" did not "mandate[] the *particular actions* that Facebook took with regard to [the plaintiff's] Facebook page." *Id.* at 926, 930 (emphasis added). The same, of course, is true here. In response, Plaintiff argues that Congressman Schiff has comparatively less power than the Federal Defendants because he is just "a single Congressman." Pl.'s Resp. at 12. But the relevant portion of the court's analysis—that neither Congressman Schiff nor the CDC were responsible for the relevant actions by Facebook because neither "mandated th[ose] *particular actions*"—did not hinge on the level of Congressman Schiff's authority. *Children's Health*, 546 F. Supp. 3d at 930. Further, that case did not concern only Congressman Schiff, but also the CDC, an Executive Branch agency. *Children's Health* is thus applicable here.

And even if Plaintiff had alleged that a Federal Defendant specifically flagged Plaintiff's posts, or promoted a definition of "misinformation" that would necessarily encompass Plaintiff's posts, Plaintiff provides no well-pled allegation indicating that the Federal Defendant called on Facebook or Twitter to take the precise *remedial actions* at issue: disabling Plaintiff's social media account. Again, to the contrary, the Advisory proposes a range of potential remedies that social media companies can consider—including just labeling posts that contain misinformation, *see* Fed Defs.' MTD at 8, 21—and the White House Press Secretary clarified that "[a]ny decision about platform usage and who should be on the platform is orchestrated and determined by private-sector companies" and "that's their decision," Press Briefing by Press Secretary Jen Psaki, https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/16/press-briefing-by-press-secretary-jen-psaki-july-16-2021, 22 (July 16, 2021). Thus, Plaintiff's allegations fail to establish that any Federal Defendant specifically targeted Plaintiff's posts, and specifically called for Plaintiff to be suspended from either Facebook or Twitter.

Fed. Defs.' Motion to Dismiss Reply
No. 3:22-cv-00737-CRB

In response, Plaintiff first notes that he alleged, in conclusory terms, that "'[o]n information and belief, Defendants Biden and Murthy directed Defendants Facebook and Twitter to remove [Plaintiff's] social media posts because they disagreed with the viewpoints he espoused in them and conspired with Facebook and Twitter to do so." Pl.'s Resp. at 6 (*quoting* Compl. (Facts) ¶ 20). The Complaint, however, lacks any "factual enhancement" for this allegation, and thus it is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (allegations based "on information and belief" that a defendant "direct[ed]" others "to take [certain] actions that form the basis of the complaint" are "[c]onclusory and "are insufficient to state a claim"); *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012) ("discount[ing] . . . the plaintiffs' wholly conclusory allegation that the supervisory defendants personally . . . directed . . . the allegedly unconstitutional stops"). Indeed, the Complaint lacks any factual matter justifying an inference that any Federal Defendant was even aware of Plaintiff in particular, or the precise social media posts at issue in this litigation.

Plaintiff then states that he alleged that the Federal Defendants promoted a "standard that would have required" Facebook and Twitter to "consistently take action against misinformation super-spreaders on their platforms." Pl.'s Resp. at 6. But the Complaint lacks any well-pled allegation indicating either that (i) a Federal Defendant informed Facebook or Twitter that Plaintiff was a "misinformation super-spreader[] on" its platform, or (ii) a Federal Defendant defined the term "misinformation super-spreader[]" in a manner that necessarily includes Plaintiff. Plaintiff thus fails to show that a Federal Defendant "dictated the decision[s]" at issue "in [this] particular case": the decisions by Facebook and Twitter to suspend Plaintiff from their platforms. *Blum*, 457 U.S. 991 at 1010. Those decisions therefore are not attributable to the Federal Defendants, and so the Court should dismiss Plaintiff's First Amendment claim against the Federal Defendants.

### CONCLUSION

For these reasons, the Court should grant the Federal Defendant's Motion to Dismiss.[5]

---

[5] Plaintiff fails to respond to Defendants' argument that, at a minimum, the Court should dismiss the First Amendment claim insofar as it applies to, and is used a justification for injunctive relief

14

Dated:  May 2, 2022

Respectfully submitted,

BRIAN NETTER
Deputy Assistant Attorney General

STEPHANIE HINDS
United States Attorney

ERIC BECKENHAUER
Assistant Director, Federal Programs Branch

/s/ *Kuntal Cholera*
KUNTAL CHOLERA DC Bar No. 1031523
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-8645
Fax: (202) 616-8470
Email: kuntal.cholera@usdoj.gov

*Counsel for Defendants*

---

against, the President, *see* Fed. Defs.' MTD at 22 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (a "grant of injunctive relief against the President himself [would be] extraordinary," and "in general," courts have "no jurisdiction of a bill to enjoin the President in the performance of his official duties")), and it should be treated as conceded, *see supra* at 3.

15