**Willkie Farr & Gallagher LLP**
Jonathan Alan Patchen (SBN 237346)
jpatchen@willkie.com
Yuhan Alice Chi (SBN 324072)
ychi@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone:  (415) 858-7400

**Willkie Farr & Gallagher LLP**
Michael Gottlieb (DCBN 974960)*
mgottlieb@willkie.com
Meryl Conant Governski (DCBN 1023549)*
mgovernski@willkie.com
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone:  (202) 303-1442
*Admitted Pro Hac Vice*

**Attorneys for Defendant
Twitter, Inc.**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JUSTIN HART,<br><br>                          Plaintiff,<br><br>          vs.<br><br>FACEBOOK, INC., TWITTER, INC.; VIVEK MURTHY in his official capacity as United States Surgeon General; JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; the DEPARTMENT OF HEALTH AND HUMAN SERVICES, and the OFFICE OF MANAGEMENT AND BUDGET,<br><br>                          Defendants. | Case No. 3:22-cv-00737-CRB<br><br>**DEFENDANT   TWITTER,   INC.'S REPLY IN SUPPORT OF TWITTER'S MOTION TO STRIKE**<br><br>Judge: Hon. Charles R. Breyer<br>Date: May 12, 2022<br>Time: 10:00 AM<br>Ctrm: Courtroom 6<br><br>Action Filed: August 31, 2021<br>Trial Date: None |

Controlling Ninth Circuit and California law make clear that Defendant Twitter Inc.'s ("Twitter") Motion to Strike (Dkt. 72 ("Motion" or "Mot.")) should be granted.[1]   Plaintiff's Opposition to the Motion (Dkt. 78 ("Opposition" or "Opp.")) fails to cite any basis or authority that would warrant denying the Motion.  Clear legal authority provides for the application of California's Anti-SLAPP Statute in federal court and confirms that Plaintiff's Complaint falls within the Statute. Because Plaintiff's Complaint fails to state a claim as a matter of law, Twitter is entitled to prevail on its Motion.

## I.   BINDING PRECEDENT HOLDS THAT CALIFORNIA'S ANTI-SLAPP STATUTE IS APPLICABLE IN FEDERAL COURT.

Plaintiff argues that California's Anti-SLAPP Statute is "inapplicable" in federal courts based on the Supreme Court's 2010 decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).  Plaintiff is wrong.

*Shady Grove* did not address an anti-SLAPP statute.  Rather it held that a state statute limiting class actions could not stand because it conflicted with the federal rules.  Opp. at 29–30. Plaintiff suggests the general principle in *Shady Grove* precludes application of California's Anti-SLAPP statute here.  This assertion is without merit.  The Ninth Circuit has *expressly* rejected the argument that California's Anti-SLAPP Statute, as implemented in federal court and requested by Twitter here, conflicts with the federal rules.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018), *amended,* 897 F.3d 1224 (9th Cir. 2018) ("Our interpretation eliminates conflicts between California's anti-SLAPP law's procedural provisions and the Federal Rules of Civil Procedure.").  Contrary to Plaintiff's claim that "the applicability of that decision is an open question in the Ninth Circuit" because that decision "did not address nor cite *Shady Grove*," Opp. at 32, the Ninth Circuit examined the Anti-SLAPP statute under the operable principle of *Shady Grove* and trimmed only such portions of the statutory Anti-SLAPP procedure that *actually* conflicted with the federal rules.  Twitter's Motion adheres to the modified Anti-SLAPP procedure set forth in *Planned Parenthood*.  In doing so, it falls squarely within the many Ninth Circuit holdings (including *Planned Parenthood*) that affirm, apply, or otherwise

---

[1] This Reply adopts and uses the terms as defined in the Motion.

approve the application of the Anti-SLAPP Statute in federal court. *Planned Parenthood*, 890 F.3d at 835; *see also, e.g., Clifford v. Trump*, 818 F. App'x 746, 747 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 1374 (2021) ("[w]e have long held that analogous procedures in California's anti-SLAPP law apply in federal court"); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999) ("we hold that the district court erred in finding that subsections (b) and (c) of California's Anti–SLAPP statute could not be applied"). As recently as August 2021, the Ninth Circuit rejected the same argument Plaintiff makes here, that the Ninth Circuit should "'find that the anti-SLAPP statute should not apply in federal court.'" *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1154 (9th Cir. 2021) ("we have held that 'there is no direct collision' between the special motion to strike subsection of the statute and the Federal Rules").

Despite clear authority permitting application of Anti-SLAPP in federal authority, Plaintiff argues that this Court should ignore binding Ninth Circuit precedent and instead follow a Second Circuit decision that found the Anti-SLAPP inapplicable. Opp. at 30–31 (discussing *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020)). Aside from the basic premise that this Court is bound by Ninth Circuit law, another Court in this District considered and rejected that same argument, explaining:

> Given that our own court of appeals has blessed application of California's anti-SLAPP statute, at least to the extent indicated in the preceding quote, ***it would be impermissible for a district court to follow verbatim the Second Circuit's opinion which invalidated the entirety of the California anti-SLAPP statute in federal court***. *La Liberte*, 966 F.3d 79. In effect, our own Ninth Circuit has re-written the California anti-SLAPP statute to harmonize it with Rules 12 and 56 and has effectively eliminated the probability of success language from the statute. The Second Circuit did no re-writing and no harmonizing in striking down California's anti-SLAPP law.

*CoreCivic Inc. v. Candide Grp. LLC*, No. C-20-03792-WHA, 2021 WL 1267259, at *5 (N.D. Cal. Apr. 6, 2021) (emphasis added); *accord Est. of B.H. v. Netflix, Inc.*, No. 4:21-CV-06561-YGR, 2022 WL 551701, at *1 n.2 (N.D. Cal. Jan. 12, 2022) ("[t]his Court is bound to apply the anti-SLAPP statute and its fee provision") (collecting cases). This Court should do the same.

1

2

## II.     PLAINTIFF FAILS TO REBUT THAT HIS LAWSUIT STEMS FROM PROTECTED FREE SPEECH ACTIVITY.

3

4

As set forth in its Motion, Plaintiff's Complaint is derived from Twitter's decision to remove

5

the Violative Tweet and temporarily lock his account; such an action relates to an issue of public

6

importance (COVID-19 misinformation); and such action was "in furtherance of the exercise" of

7

Twitter's free speech rights.  Plaintiff does not contest the first two points in his Opposition and

8

fails to counter the clear support set forth in the Motion that Twitter's actions were in furtherance

9

of its free speech Rights.  *Compare* Mot. at 8–9, *with* Opp. at 33–37; *Knudsen v. Sprint Commc'ns*

10

*Co.*, No. C13-04476 CRB, 2016 WL 4548924, at *10 (N.D. Cal. Sept. 1, 2016) (Breyer, J.) (claim

11

waived where plaintiff failed to address deficiencies in opposition)).

12

Plaintiff asserts that Twitter's conduct cannot be "in furtherance of the exercise" of "the

13

constitutional right of free speech in connection with a public issues or an issue of public interest"

14

because Section 425.16(e)(4) requires conduct "similar to an oral or written statement" and does not

15

apply to editorial decisions over third-party content published on private platforms.  *See* Opp. at 34.

16

Plaintiff is wrong as a matter of law and none of the cited cases provides support for either

17

proposition.  Opp. at 34–35 (discussing *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871 (2019)

18

and *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995 (2021), and citing *FilmOn.com Inc. v.*

19

*DoubleVerify Inc.*, 7 Cal. 5th 133, 153 (2019)).

20

Plaintiff relies on *Wilson* to argue that Twitter's editorial control over content published on

21

its platform is not an act that "'facilitates a defendant's speech rights'" because that case "teaches

22

that organizations can discipline the individual bearers of their corporation message" and "no one

23

here thinks Hart is bearing" Twitter's "organizational message."  Opp. at 34–35 (citing *Wilson*, 7

24

Cal. 5th at 893, 896).  As Plaintiff recognizes, the California Supreme Court in *Wilson* held that

25

§425.16(e)(4) protects conduct that "facilitates expression" (not solely oral or written statements):

26

"At a minimum, the subdivision shields expressive conduct—the burning of flags, the wearing of

27

armbands, and the like—that, although not a 'written or oral statement or writing' (§ 425.16, subd.

28

(e)(1)–(3)), may similarly communicate views regarding "matters of public significance[.]".

*Wilson*, 7 Cal. 5th at 893.  The Court held that § 425.16(e)(4) could apply to a claim alleging CNN

had discriminatory or retaliatory motives when it terminated Plaintiff for plagiarism, including because "the right of a news organization to speak includes the right to exercise editorial control and judgment—that is, the right to choose what news it will report and how the news will be reported." *Id*. at 894, 898.[2]

On its face, *Wilson* confirms that a private organization facilitates its First Amendment rights when it exercises editorial judgment over what content it publishes. That holding is consistent with clear authority noted in Twitter's Motion—including *O'Handley*—which holds that entities like Twitter have a protected First Amendment right to moderate content *posted by third parties*. *See* Mot. at 7–8 (citing cases including *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 257–58 (1974), *Reno v. ACLU*, 521 U.S. 844, 870 (1997) and *O'Handley v. Padilla*, No. 21-cv-07063-CRB, 2022 WL 93625, at *14 (N.D. Cal. Jan. 10, 2022)). As this Court explained in *O'Handley*: "Like a newspaper or a news network, Twitter makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and ***those decisions are protected by the First Amendment***." *Id*. at *14 (emphasis added). Plaintiff ignores this precedent and attempts to construe *Wilson* as applying only where organizations assert editorial control over its employees as "individual bearers of their corporate message." Opp. at 35. *Wilson* does not espouse such a narrow application of § 425.16(e)(4), and Plaintiff does not reconcile the inconsistency between his position with the law holding otherwise.[3]

Likewise, the Plaintiff's reliance on *Bonni* is misplaced. In that case, the Supreme Court of California found § 425.16(e)(4) inapplicable because there was no "connection" between the decision of a group of hospitals to discipline a doctor "and their petitioning or speech abilities." *Id*. at 1073–74. Unlike in *Bonni*, Twitter's complained-of actions here—removing the Violative Tweet

---

[2] Plaintiff claims that the Ant-SLAPP Motion in *Wilson* "failed" (Opp. at 35), but relevant to the first prong of Anti-SLAPP, the California Supreme Court found that the Defendant had met its burden with respect to claims that arose from the termination. *Wilson*, 7 Cal. 5th at 898.

[3] Plaintiff's reliance on the out-of-circuit case *Price v. City of New York*, 2018 U.S. Dist. LEXIS 105815, *35–36 (S.D.N.Y. June 25, 2018) provides no support for Plaintiff's argument. That case did not address whether a private organization has a First Amendment right to control speech on its platform. Rather that case related to whether speech of a third party could be attributed to the government for purposes of a public forum analysis. *Id*.

1   and locking Plaintiff's account—are directly tied to its constitutional right to exercise editorial

2   judgment over content distributed on its platform.  *See* Mot. at 7–9.  Nevertheless, Plaintiff asserts

3   that *Bonni* applies here because the "Social Media Defendants are arguing that Hart's stating a given

4   viewpoint means that any action taken in response to that viewpoint, is entitled to equal protection."

5   Opp. at 36.  That argument should be rejected.  Twitter is not arguing that "any action" taken in

6   response to Plaintiff Tweet is protected activity; rather, Twitter's point is that the specific action

7   taken (and that Plaintiff challenges) is directly protected by the Anti-SLAPP Statute.  The law

8   recognizes an independent constitutional right to exercise editorial control over content a private

9   corporation publishes on its platforms, including the right to remove what had been published. Mot.

10   at 7-9 [4]

11       Finally, Plaintiff advances a policy-based argument, suggesting that the Court not apply the

12   Anti-SLAPP Statute (and, really, its mandatory attorney fee provision), because the moving party

13   here is a private corporation, rather than a non-profit corporation or an individual.  Opp. at 36.  The

14   Anti-SLAPP Statute does not vary its application based on the resources, nature, or type of party

15   who brings an Anti-SLAPP motion.  And courts in this Circuit have granted such motions in favor

16   of corporations.  *See, e.g. Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1020 (9th Cir. 2017); *Doe v.*

17   *Gangland Prods., Inc.*, 730 F.3d 946, 950 (9th Cir. 2013); *CoreCivic Inc.*, No. C-20-03792-WHA,

18   2021 WL 1267259, at *7.

19

20   [4] Contrary to Plaintiff's suggestion, *FilmOn.com* does not state § 425.16(e)(4) applies only to oral
21   or written statements.  To the contrary, that case makes clear that the Section "encompasses **conduct**
     **and speech**" of a type "*similar* to what is referenced in subdivisions e(1) through e(3)"—which
22   relate to statements "made before a legislative, executive, or judicial proceeding, or any other
     official proceeding" (§ 425.16(e)(1)),  "in connection with an issue under consideration or review
23   by a legislative, executive, or judicial body, or any other official proceeding" (§ 425.16(e)(2)), or
     "in a place open to the public or a public forum in connection with an issue of public interest" (§
24   425.16(e)(3)).  *Compare FilmOn.com*, 7 Cal. 5th at 145, *with* Opp. at 34.  Further, *FilmOn.com* is
     entirely irrelevant here.  In that case, the Court held that Anti-SLAPP did not apply to allegedly
25   defamatory statements contained within "confidential reports" that were "exchanged confidentially,
     without being part of any attempt to participate in a larger public discussion."  *Id*. at 140.  In contrast,
26   Twitter's alleged conduct relates to public enforcement of its COVID-19 Misleading Information
27   Policy to exercise editorial control over content published publicly on its platform on a "topic of
     widespread public interest."  Mot. at 7–9.

28

Twitter's removal of the Violative Tweet and temporary locking of Plaintiff's account qualifies as conduct in furtherance of its First Amendment rights, and Plaintiff in his Opposition offers no contrary authority. Mot. at 7-8. Plaintiff concedes that his Complaint is derived from that decision by Twitter and that such an action related to an issue of public importance. *Id*. at 8-9. Accordingly, Twitter has met its prima facie burden that the Twitter-related state-law claims satisfy the first prong required pursuant to the Anti-SLAPP Statute.

### III.    PLAINTIFF HAS NOT DEMONSTRATED A PROBABILITY OF SUCCEEDING ON THE MERITS.

Plaintiff asserts, without any legal citation, that Twitter "abandon[ed] the 'probability' and burden-shifting regime" under California's Anti-SLAPP Statute by acknowledging that the Court should apply the Federal Rule of Civil Procedure 12(b)(6) standard. Opp. at 32. This assertion is wholly without merit. Twitter is following the procedure set forth by the Ninth Circuit. As the Ninth Circuit's decision in *Herring* illustrates, even when applying the Rule 12(b)(6) standard, the burden shifts to the plaintiff to "demonstrate a reasonable probability of prevailing" based on the pleadings once the defendant meets the prima facie burden of showing the Complaint was based on an act in furtherance of a constitutional right. *Herring*, 8 F.4th 1148 at 1156–57.

Here, as set forth in Twitter's Motion, Twitter clearly demonstrated that Plaintiff's Complaint was based on an act in furtherance of a constitutional right. Thus, it becomes Plaintiff's burden to demonstrate a likelihood of success. Plaintiff has not, and cannot, meet that burden. Plaintiff argues that his case has "passed the threshold of 'minimal merit'" based on the arguments advanced in the Opposition in response to Twitter's Motion to Dismiss the Complaint. Opp. at 44; *see also* Dkt. 70 ("Motion to Dismiss"). However, for the reasons outlined in Twitter's Motion to Dismiss and the Reply In Support of the Motion to Dismiss (filed simultaneously with this Reply), there is no merit as a matter of law to <u>any</u> of his claims. Accordingly, the Court should grant Twitter's Motion. Mot. at 10–12.

Dated: May 2, 2022

Respectfully submitted,


By:   */s/ Jonathan A. Patchen*
       Jonathan A. Patchen
       Michael Gottlieb
       Meryl Conant Governski
       Yuhan Alice Chi

**WILLKIE FARR & GALLAGHER LLP**
*Attorneys for Defendant Twitter, Inc.*