**Willkie Farr & Gallagher LLP**
Jonathan Alan Patchen (SBN 237346)
jpatchen@willkie.com
Yuhan Alice Chi (SBN 324072)
ychi@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400

**Willkie Farr & Gallagher LLP**
Michael Gottlieb (DCBN 974960)*
mgiottlieb@willkie.com
Meryl Conant Governski (DCBN 1023549)*
mgovernski@willkie.com
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1442
**Admitted Pro Hac Vice*
**Attorneys for Defendant Twitter, Inc.**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

JUSTIN HART

Plaintiff,

vs.

FACEBOOK, INC., TWITTER, INC.; VIVEK MURTHY in his official capacity as United States Surgeon General; JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; the DEPARTMENT OF HEALTH AND HUMAN SERVICES, and the OFFICE OF MANAGEMENT AND BUDGET

Defendants.

Case No. 3:22-cv-00737-CRB

**DEFENDANT TWITTER, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Judge: Hon. Charles R. Breyer
Date: May 12, 2022
Time: 10:00 am
Ctrm: Courtroom 6

Action Filed: August 31, 2021
Trial Date: None

# TABLE OF CONTENTS


I. PLAINTIFF'S FEDERAL CLAIM IS DEFICIENT AS A MATTER OF LAW. ........1

A. Plaintiff Has No First Amendment Cause of Action Against Twitter. ..............2

B. Plaintiff Fails To Adequately Plead State Action By Twitter............................3

1. The Complaint Does Not Adequately Plead Coercion. .........................3

2. Plaintiff Has Not Alleged Any Plausible Allegations of Joint Action...6

II. THE COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF THE CALIFORNIA CONSTITUTION. ....................................................................8

III. PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS BECAUSE THERE IS NO CLEAR AND UNAMBIGUOUS PROMISE ON WHICH HE COULD REASONABLY RELY. ..........................................................................11

IV. PLAINTIFF'S CLAIMS ARE BARRED....................................................13

A. The First Amendment Bars All Of Plaintiff's Claims As To Twitter.............13

B. Section 230 Bars All Of Plaintiff's Claims....................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443 (9th Cir. 1992) ....................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................3, 4

*Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 2795 (2021)....................8

*Blum v. Yaretsky*, 457 U.S. 991 (1982)....................3, 6

*Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106 (1999) ....................10

*Brittain v. Twitter, Inc.*, No. 19-cv-00114-YGR, 2019 WL 2423375 (N.D. Cal. June 10, 2019)....................15

*Chavarria v. Ralph's Grocery Co.*, 733 F.3d 916 (9th Cir. 2013) ....................13

*Children's Health Defense v. Facebook, Inc.*, 546 F. Supp. 3d 909 (N.D. Cal. 2021)....................2, 7

*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)....................2

*Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017)....................5

*Daniel v. Wayans*, 8 Cal. App. 5th 367 (2017) ....................10

*Daniels v. Alphabet, Inc.*, No. 20-cv-04687-VKD, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) ....................15

*Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW, 2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) ....................13

*Doe v. Google LLC*, No. 20-CV-07502-BLF, 2021 WL 4864418 (N.D. Cal. Oct. 19, 2021)....................6

*Ebeid v. Facebook, Inc.*,
No.18-cv-07030-PJH, 2019 WL 2059662 (N.D. Cal. may 9, 2019) ......................................15

*Fashion Valley Mall, LLC v. National Labor Relations Board,*
42 Cal. 4th 850 (2007) .............................................................................................9

*Fed. Agency of News LLC v. Facebook, Inc*.,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) .......................................................................15

*Flagg Bros. Inc. v. Brooks,*
436 U.S. 149 (1978)...................................................................................................8

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n,*
26 Cal. 4th 1013 (2001) .........................................................................................8, 9

*Heineke v. Santa Clara Univ.,*
965 F.3d 1009 (9th Cir. 2020) ................................................................................3, 6

*hiQ Labs, Inc. v. LinkedIn Corp.,*
273 F. Supp. 3d 1099 (N.D. Cal. 2017), *aff'd and remanded*, 938 F.3d 985 (9th Cir. 2019), cert. granted, judgment vacated on other grounds, 141 S. Ct. 2752 (2021)....................................................................................................9, 10

*Huber v. Biden,*
No. 21-CV-06580-EMC, 2022 WL 827248 (N.D. Cal. Mar. 18, 2022)..............................6, 7

*Informed Consent Action Network v. YouTube LLC,*
No. 20-CV-09456-JST, 2022 WL 278386 (N.D. Cal. Jan. 31, 2022) ......................................3

*Kahn Creative Partners, Inc. v. Nth Degree, Inc.,*
No. CV 10-932-JST FFMX, 2011 WL 1195680 (C.D. Cal. Mar. 29, 2011)..........................11

*Knievel v. ESPN,*
393 F.3d 1068 (9th Cir. 2005) ....................................................................................12

*Knudsen v. Sprint Commc'ns Co.,*
No. C13-04476 CRB, 2016 WL 4548924 (N.D. Cal. Sept. 1, 2016) (Breyer, J.) ..................13

*Lewis v. Google LLC,*
461 F. Supp. 3d 938 (N.D. Cal. 2020) .........................................................................15

*Malmstrom v. Kaiser Aluminum & Chem. Corp.,*
187 Cal. App. 3d 299 (1986) ......................................................................................11

*Missud v. Oakland Coliseum Joint Venture,*
No. 12-02967 JCS, 2013 WL 3286193 (N.D. Cal. June 27, 2013) .....................................6, 7

*Moss v. U.S. Secret Serv.,*
572 F.3d 962 (9th Cir. 2009) .......................................................................................4

*Murphy v. Twitter, Inc.*,
60 Cal. App. 5th 12 (2021) ....................11, 13

*O'Handley v. Padilla*,
No. 21-cv-07063-CRB, 2022 WL 93625 (N.D. Cal. Jan. 10, 2022) ....................1, 4, 7, 15

*Overstreet v. United Bhd. of Carpenters & Joiners of Am., Loc. Union No. 1506*,
409 F.3d 1199 (9th Cir. 2005) ....................2

*Packingham v. North Carolina*,
137 S. Ct. 1730 (2017)....................10

*Ralphs Grocery Co. v.United Food & Com. Workers Union Loc. 8*,
55 Cal. 4th 1083 (2012) ....................8

*Spy Phone Labs v. Google, Inc.*,
15-cv-03756-KAW, 2016 WL 6025469 (N.D. Cal. Oct. 14, 2016) ....................14

*Tsao v. Desert Palace, Inc.*,
698 F.3d 1128 (9th Cir. 2012) ....................6

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ....................12

*United States v. Rothman*,
492 F.2d 1260 (9th Cir. 1973) ....................14

*Zepeda v. Holder*,
483 F. App'x 315 (9th Cir. 2012) ....................11

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017)....................2, 15

*Zimmerman v. Facebook, Inc.*,
No. 19-cv-04591-VC, 2020 WL 5877863 (N.D. Cal. Oct. 2, 2020) ....................9

*Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*,
550 U.S. 81 (2007)....................15

**Statutes**

Communications Decency Act Section 230....................1

The Court should grant Defendant Twitter Inc.'s ("Twitter") Motion to Dismiss (Dkt. 70 ("Motion" or "Mot.")).[1] As Twitter's Motion demonstrates, Plaintiff's Complaint should be dismissed with prejudice as a matter of law. The Complaint fails to state a claim for a violation of either the Federal or California constitutions as Plaintiff has failed to allege any facts demonstrating state action or that Twitter's platform is "freely and openly" accessible to the public. As this Court recently recognized, dismissal of the constitutional claims is warranted where there is no evidence that Twitter's actions are the product of state action and the Court should similarly find that dismissal is warranted here. *See O'Handley v. Padilla*, No. 21-cv-07063-CRB, 2022 WL 93625, at *10 (N.D. Cal. Jan. 10, 2022). The Complaint's claim of promissory estoppel is also deficient and should be dismissed because Plaintiff entirely failed to allege any clear and unambiguous promise Twitter made to Plaintiff or allege any promise that Plaintiff could reasonably rely on. And all of Plaintiff's claims are either barred by Twitter's own First Amendment rights, Section 230 of the Communications Decency Act, or the Terms of Service to which Plaintiff contractually agreed. Plaintiff's Opposition (Dkt. 78 ("Opposition" or "Opp.")) fails to demonstrate any basis that could support a claim in this matter and fails to rebut Twitter's arguments set forth in its Motion. Instead, Plaintiff asks this Court to ignore controlling legal doctrines and misapply pleading standards. Accordingly, the Court should grant Twitter's Motion to dismiss the Complaint with prejudice.

## I. PLAINTIFF'S FEDERAL CLAIM IS DEFICIENT AS A MATTER OF LAW.

Plaintiff has not stated a federal First Amendment claim against Twitter because the Complaint alleges only a direct cause of action, which controlling Supreme Court authority does not recognize against a private corporation. The claim also fails because the Complaint relies on facially conclusory and implausible assertions of state action; it does not, and cannot, provide any factual allegations demonstrating that Twitter's conduct was that of a state actor. The First Amendment claim against Twitter should be dismissed with prejudice.

[1] This Reply incorporates all terms as defined in the Motion.

**A. Plaintiff Has No First Amendment Cause of Action Against Twitter.**

As set forth in Twitter's Motion, Plaintiff has not pleaded a cause of action against Twitter based on the First Amendment and the only possible cause of action—a *Bivens* action—was not available because Twitter is a corporation. Mot. 6–7. Plaintiff concedes that a *Bivens* action "was not designed to be brought against a private corporation" and that he does not have a "private right of action" to bring this lawsuit. Opp. at 13.[2]

Plaintiff nevertheless tries to create a cause of action by arguing that courts will imply a cause of action for injunctive relief for constitutional claims. Opp. at 13–14 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) and *Bell v. Hood*, 327 U.S. 678, 684 (1946)). This attempt should be rejected. At most, Plaintiff's cases permit an implied cause of action for injunctive relief against government officials. Plaintiff cites no case implying a cause of action for injunctive relief against a private party.

The Court should reject Plaintiff's attempt to reframe his cause of action and imply a claim for injunctive relief against Twitter because "special factors counseling hesitation" and "an alternative remedial structure" exist here. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858–59 (2017). Plaintiff's action against the Federal Defendants is an "alternative remedial structure." Because Plaintiff's theory is that Twitter was either coerced by, or acting jointly with, the Federal Defendants (Opp. at 2–13)—and if he is correct and has standing—then he can obtain relief via an injunction precluding the Federal Defendants from engaging in the alleged conduct. Further, there are "special factors counseling hesitation" against implying an injunctive relief claim against Twitter, including (1) Congressional rejection of such a claim via Section 230 of the CDA and (2) because implying injunctive relief would implicate Twitter's own First Amendment right to decide the content to publish or remove from its platform. Mot. at 19; *cf. Overstreet v. United Bhd. of Carpenters & Joiners of Am., Loc. Union No. 1506,* 409 F.3d 1199, 1209 (9th Cir. 2005) (applying constitutional

[2] The law precludes creation of a *Bivens* action here. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) (citing cases); *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) ("inferring a constitutional tort remedy against a private entity [] is therefore foreclosed"); *Children's Health Defense v. Facebook, Inc.*, 546 F. Supp. 3d 909, 922–24 (N.D. Cal. 2021) (*citing Ziglar* and dismissing *Bivens* First Amendment claim against private entity defendants).

avoidance doctrine to NLRB's injunctive authority because of the potential First Amendment issues). In sum, there is no basis for implying an injunction-only cause of action against Twitter here.

**B. Plaintiff Fails To Adequately Plead State Action By Twitter.**

Even if Plaintiff properly alleged a cause of action under the First Amendment, Plaintiff still must plead that Twitter's alleged conduct amounts to state action. Plaintiff has failed to do so. Plaintiff's allegations of coercion and joint action are conclusory and implausible (Compl. ¶¶ 1–2, 4, 7–20 *bis*, 53, 55–61), and do not sufficiently plead any degree of direction or participation by the Federal Defendants in Twitter's decision to take action with respect to Plaintiff (Mot. at 7–15).

1. <u>The Complaint Does Not Adequately Plead Coercion.</u>

To establish coercion, Plaintiff must plausibly plead that the Federal Defendants "'***commanded a particular result in***, or otherwise participated in, ***his specific case***." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020) (emphasis added); *Informed Consent Action Network v. YouTube LLC*, No. 20-CV-09456-JST, 2022 WL 278386, at *6 (N.D. Cal. Jan. 31, 2022); *see Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982). The Complaint fails to plead any factual allegations demonstrating coercion and such a finding would be inconsistent with the facts as pleaded.

*i. Plaintiff fails to plead any factual allegations that amount to coercion.*

Plaintiff's effort to plead coercion relies primarily on the allegation that on "information and belief, Defendants Biden and Murthy directed Defendants Facebook and Twitter to remove Hart's social media posts because they disagreed with the viewpoints he espoused in them and conspired with Facebook and Twitter to do so." Opp. at 5–6 (citing Compl. ¶ 20 *bis*); *see also id.* (citing Compl. ¶ 53 ("directed Facebook and Twitter to remove social media posts like those of Hart"). Plaintiff repeatedly asserts that this Court must accept these allegations as true. Opp. at 1–2, 8–9. Contrary to Plaintiff's demands, the Court need not accept these allegations as true because they amount to a "legal conclusion couched as a factual allegation[.]" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted); *see also* Mot. at 9–10. "While legal conclusions can provide the framework of a complaint, ***they must be supported by factual***

***allegations***." *Iqbal*, 556 U.S. at 679 (emphasis added). Plaintiff's allegation that the federal government "directed" Twitter's actions regarding Plaintiff is not "supported by factual allegations" (*id.*) and "is just the sort of conclusory allegation that the *Iqbal* Court deemed inadequate" (*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009)). *See also* Mot. at 9.[3] Plaintiff has no factual allegation of *direct* communication between anyone in the government with anyone with Twitter about anything, let alone about Plaintiff's "specific case," including how, who, or when that alleged conversation occurred.

*ii. Federal Defendants' alleged conduct does not demonstrate coercion.*

Plaintiff claims statements by the Federal Defendants support his conclusory allegation that the Federal Defendants "directed" Twitter to take action. Opp. at 5–6. But none of the statements in the underlying materials were made directly to Twitter or include any reference to Plaintiff or his tweets. *Compare* Opp. at 5, *with* Patchen Decl. Exs. 4–6. Moreover, nothing in the statements reflect the Federal Defendants directing, ordering, or commanding Twitter to do anything. To the contrary, the language reflects at most requests and suggestions. *See* Patchen Decl. Ex. 6 (Advisory) at 12; Mot. at 10; *accord* Opp. at 7 (quoting Advisory as providing "recommendations for how that issue should be addressed"). The Opposition attempts to argue that President Biden's statement to the media that social media platforms are "killing people" is a coercive "threat" that "shames" Social Media companies into submission. Opp. at 3–4 (citing Compl. ¶ 19 *bis*). Plaintiff provides no authority supporting a finding that such a general statement of opinion amounts to coercion, and he fails to point to any "factual content that allows the court" to infer that Twitter felt "shamed" or "threatened" or coerced by the President's statement. *O'Handley v. Padilla*, 2022 WL 93625, at *6 (N.D. Cal. Jan. 10, 2022) ("A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)). Even if the President's rhetoric caused Twitter to feel "ashamed,"

[3] Plaintiff claims Defendants are requiring he "prove" his allegations rather than hold him to his burden of pleading factual allegations sufficient to state a claim. *E.g.* Opp. at 7–8. To the extent the Opposition is claiming that it needs discovery to properly plead its claim (*id.*), such a request is legally improper. *Iqbal*, 556 U.S. at 678–79 (Federal Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[t]he President certainly has the right to use the bully pulpit to encourage his policies." *Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 539 (N.D. Cal. 2017). There is thus good reason for the rigorous requirements for pleading coercion, a requirement Plaintiff fails to satisfy here.

The timeline in the Complaint also contradicts and makes implausible any finding that the Federal Defendants' statements coerced Twitter. Plaintiff insists that the relevant Federal Defendant communications occurred on or *before* July 15 and 16. Opp. at 9. But, according to the Complaint, Plaintiff posted the Violative Tweet on July 18, 2021 and Twitter removed it the same day. Compl. ¶¶5–6 *bis*.[4] Taken to its logical conclusion, Plaintiff's argument would mean that the Federal Defendants directed Twitter to remove the Violative Tweet three days before it existed. Accepting *arguendo* that the Federal Defendants directed Twitter to take any action on July 15 and 16, 2021, such a directive could not have been specific to Plaintiff. Even accepting the Opposition's thesis that there was an "already-existing, ongoing policy" at the time of the press events, there is no nexus—based on the pleaded timeline of events—between Twitter's decision to remove misinformation generally pursuant to its COVID-19 Misleading Information Policy and Twitter's alleged conduct specific to the Plaintiff. Nor does the Complaint allege that Twitter created, changed, or enforced that policy differently after July 2021.

*iii. Plaintiff's request that the Court find coercion based solely on allegations of government conduct should be rejected.*

Plaintiff asks this Court to ignore the legal requirement and his burden to show that Twitter was coerced in "his specific case" (Opp. at 7) and proffers (without legal support) that it is legally sufficient to find coercion based on allegations that the government "asked social media companies to 'consistently take action against misinformation super-spreaders on their platforms'" (Opp. at 6–

[4] Twitter argued in the Motion that the Complaint alleged that Twitter removed the Violative Tweet prior to "any" directives of the Federal Defendants (*e.g.* Mot. at 9) based on the Complaint alleging, immediately after referencing the removals by Twitter and Facebook, that: "***Within days of these two removals***, the administration of Defendant Biden revealed publicly that it is directing social media companies to remove posts it deems to be spreading misinformation regarding COVID-10." Compl. ¶ 7 *bis* (emphasis added).

7 (citation omitted)).[5] As discussed above, binding law requires otherwise. *See Heineke*, 965 F.3d at 1014; *see also Doe v. Google LLC*, No. 20-CV-07502-BLF, 2021 WL 4864418, at *3 (N.D. Cal. Oct. 19, 2021). In *Doe v. Google*, Judge Freeman of this District rejected an identical argument in a case where the plaintiff pointed to "generalized statements from lawmakers pertaining to 'coronavirus-related misinformation,' 'disinformation proliferating online,' 'QAnon-related speech,' and 'conspiracy theories'" as a basis for coercion. *Doe v. Google*, 2021 WL 4864418, at *3. As Judge Freeman explained:

> The Court disagrees that broad lawmaker proclamations regarding 'misinformation' or 'QAnon-related speech,' for example, are sufficient to show that the government "commanded" the suspension of Plaintiffs' accounts. Even if Defendants had complied with these lawmaker statements to the letter, they would still have had the ultimate discretion on what videos or accounts fit into buckets like "misinformation" or "QAnon-related speech."

*Id*. Plaintiff provides no reason for this Court disagree and allow *coercion* to be alleged based on general statements and requests from the federal government. To the contrary, the law requires otherwise. *See Blum*, 457 U.S. at 1010 (coercion means "such significant encouragement" that the action "must in law be deemed" that of the government); *see also* Mot. at 8–9 (citing cases). The Complaint fails to allege coercion as a matter of law.

2. <u>Plaintiff Has Not Alleged Any Plausible Allegations of Joint Action.</u>

To sufficiently plead joint action, the law requires factual allegations demonstrating that the government "so far insinuated itself into a position of interdependence" with Twitter "that it must be recognized as a joint participant in the challenged activity." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012); *see Huber v. Biden*, No. 21-CV-06580-EMC, 2022 WL 827248, at *53 (N.D. Cal. Mar. 18, 2022) (no joint action because Twitter "took no action out of the ordinary or in

[5] The Opposition attempts to re-write the Complaint as stating that "senior White House officials regularly contact senior corporate executives to direct them to take down what they deem to be misinformation." Opp. at 3 (citing Compl. ¶ 7–20 *bis*). That is not what is alleged and Plaintiff cannot amend the Complaint by opposition. See Compl. ¶ 7–20 *bis* (no allegations about any specific and direct communication between "senior White House officials" and "senior corporate executives"; alleging only "[o]n information and belief" that Federal Defendants "directed . . . Twitter to remove Hart's social media posts"); *Missud v. Oakland Coliseum Joint Venture*, No. 12-02967 JCS, 2013 WL 3286193, at *9 (N.D. Cal. June 27, 2013) ("plaintiff's statement in an opposition brief cannot amend the complaint under Rule 15"). Even if he could, such an allegation is an insufficient conclusory allegation and would not cure the defects in his claim. Mot. at 9.

contravention of its clear established authority which would have suggested influence or facilitation by President Biden"); *see also Children's Health Def.*, 546 F. Supp. 3d at 932[6]; Mot. at 11–15. Plaintiff does not, and cannot, meet that standard.

Plaintiff asserts that the Complaint pleads joint action based on allegations that the Federal Defendants are in "regular touch" with, flag "problematic posts" to, and published guidance encouraging action by the Social Medial Defendants. Opp. at 4, 8–9. But legal authority holds that such generalized, public statements do not demonstrate or properly allege interdependence. *See* Mot. at 11–15 (citing cases). Notably, this Court in *O'Handley* expressly rejected such an argument by holding that "statements about working together" and "one-off, one-way communication" from the government to a social media company fails to "reflect 'substantial cooperation[,]'" especially in the absence of allegations that "Twitter consulted or conferred with the government on content decisions." *O'Handley*, 2022 WL 93625, at *10; Mot. at 13.[7] Plaintiff in his Opposition does not address or attempt to distinguish his Complaint from the one this Court dismissed with prejudice in *O'Handley*. The Opposition's sole reference to *O'Handley* relates to an allegation in that complaint that the government "established 'dedicated reporting pathways' for government officials to identify what needs to be taken down" with respect to election disinformation. Opp. at 5; *O'Handley*, 2022 WL 93625, at *6. Leaving aside that Plaintiff did not include such allegation in his Complaint and therefore cannot rely on it here (*Missud*, 2013 WL 3286193, at *9), purported "dedicated reporting pathways" was an insufficient basis in that case to establish joint action. The allegations in Plaintiff's Complaint are even more bareboned than those in *O'Handley*, and Plaintiff's Opposition does not point to any reason why the Court should reach a different result here. *See also Huber*, 2022 WL 827248, at *6 ("[a]t best, Plaintiff's allegations may suggest a shared general interest in

---

[6] Plaintiff attempts to distinguish *Children's Health Defense* by arguing that Congressman Adam Schiff "does not have the power to effect executive action like the President of the United States" and that sending letters and making public statements are "not comparable to 'being in regular touch with these social media platforms[.]'" Opp. at 12. But Plaintiff cites no law to support why those factual differences are material. They are not; even if true, such allegations do not show the government has "so far insinuated itself into a position of interdependence" with Twitter. *Id*.

[7] The Complaint's conclusory claims that the Social Media Defendants are "willing participants" does not sufficiently plead facts demonstrating that Twitter took any actions because of coercion by the Federal Government as opposed to its own volition. Opp. at 5.

reducing online COVID-19 misinformation, but that shared interest does not support a finding of a conspiracy between the government and Twitter to violate Plaintiff's First Amendment rights").

Plaintiff ignores that the law requires factual allegations demonstrating "interdependence" by claiming that he only need show that "the government affirms, authorizes, encourages, *or* facilitates unconstitutional conduct through its involvement with a private party." Opp. at 4 (quoting *Ohno v. Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013)). Contrary to Plaintiff's assertions, the Ninth Circuit has explained that a "private party cannot be treated like a state actor where the government's involvement was only to provide 'mere approval or acquiescence,' 'subtle encouragement,' or 'permission of a private choice.'" *Belgau v. Inslee*, 975 F.3d 940, 947 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 2795 (2021) (quotations removed); a*ccord Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 157, 164–65 (1978) (The Supreme Court "has never held that [the government's] mere acquiescence in a private action converts that action into that of the State."). While Plaintiff asserts it is "much easier" to demonstrate joint action than coercion (Opp. at 4), he does not plead any factual allegations supporting either theory and, therefore, fails to state a claim of state action as a matter of law.

## II. THE COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF THE CALIFORNIA CONSTITUTION.

Unlike the open-air shopping mall in *Pruneyard*, Twitter is not subject to the Free Speech Clause of the California Constitution because it is not "freely and openly accessible" to the public "in a manner similar to that of public streets and sidewalks." *See Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013, 1021, 1023 (2001) (plurality); *Ralphs Grocery Co. v.United Food & Com. Workers Union Loc. 8*, 55 Cal. 4th 1083, 1118 (2012).[8] Twitter's Terms of Service are part of a legally binding contract to which would-be Twitter account holders (including Plaintiff) must affirmatively agree as a condition to accessing Twitter's private property. This fact ends the inquiry and Plaintiff cannot disregard clear authority demonstrating

[8] Plaintiff does not provide any legal support for why it is improper "at this stage of the pleadings" for the Court to consider whether the Complaint properly pleads that Twitter is "freely and openly accessible" as a matter of law. Opp. at 15.

that *Pruneyard* only extends to real property that is "freely and openly accessible to the public." *Golden Gateway*, 26 Cal. 4th at 1032.

Contrary to Plaintiff's claims, Twitter is not like the shopping centers in *Pruneyard* and *Fashion Valley Mall, LLC v. National Labor Relations Board*, 42 Cal. 4th 850, 870 (2007), which invited anyone onto their premises without condition. Nor is it like the gated community in Laguna, where the defendant had no "authority to decide what persons or publications shall be afforded *uninvited* entry[.]" 131 Cal. App. 3d 816, 831 (1982) (emphasis in original). Plaintiff attempts to evade the fact that Twitter's Terms of Service limit access to the platform by asserting that, in his view, the Terms of Service are "no different from posters at the entrance to many shopping malls setting rules for speech and other activities." Opp. at 15–16. But Plaintiff cites no law to support that proposition. Nor does he attempt to explain in his Opposition why this Court should find *Pruneyard* applicable to Twitter despite multiple courts having rejected expanding *Pruneyard* to the Internet, or to any context outside of real property. *See, e.g, Zimmerman v. Facebook, Inc*., No. 19-cv-04591-VC, 2020 WL 5877863, at *2 (N.D. Cal. Oct. 2, 2020); *hiQ Labs, Inc. v. LinkedIn Corp.,* 273 F. Supp. 3d 1099, 1115–16 (N.D. Cal. 2017), *aff'd and remanded*, 938 F.3d 985 (9th Cir. 2019), cert. granted, judgment vacated on other grounds, 141 S. Ct. 2752 (2021); Mot. at 16–17 (citing cases).[9]

Plaintiff asks this Court to break with precedent and hold that anytime members of the public are invited to a forum, it becomes an "essential and invaluable forum for exercising [free speech] rights" and, therefore, a state actor for purposes of the state constitutional analysis. Opp. at 15–17. Under Plaintiff's theory, a private business would violate the California Constitution anytime it held a public dialogue but sought to limit the participants. Such an outcome is contrary

[9] Of those cases that the Motion cites, Plaintiff engages solely with *Zimmerman*, 2020 WL 5877863, at *1, and only to claim the case does not hold that social media companies "can *never* be sued under California's free speech clause, apparently regardless of whether they committed joint action." Opp. at 16. The relevance of *Zimmerman* (and why Twitter cited it in its Motion), is its reasoning that a social media company, like Twitter, does *not* "become a 'quasi-state actor' by operating a 'digital town square' and providing a 'public free speech forum.'" *Id*. at 2.

to the law, as discussed above and in Twitter's Motion, and Plaintiff offers no case stating otherwise.

Plaintiff cites only two cases for the proposition that the Internet is a "quintessential forum." Opp. at 15 (citing *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017) and *Daniel v. Wayans*, 8 Cal. App. 5th 367, 387 (2017)). Neither case is relevant to or provides support for Plaintiff's argument that social media companies are de facto state actors. *Packingham* concerned a governmental (not private) attempt to regulate speech—a North Carolina statute prohibiting registered sex offenders from accessing social media—and did not, as Plaintiff states, hold that Facebook was a quintessential forum but rather invalidated the statute for being insufficiently narrow. *Packingham*, 137 S. Ct. at 1735-736. *Daniel* addressed whether an Internet post was made "in a public forum" for purposes of California's Anti-SLAPP Statute, which "is broader than the scope of constitutionally protected speech" and therefore does not support the argument "that the Internet generally is a public forum subject to Art. I, Section 2 of the California Constitution." *hiQ Labs, Inc.*, 273 F. Supp. 3d at 1117; *accord Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119-120 (1999).

Following well-established law, the Court can, and should, determine that Twitter is not subject to the *Pruneyard* doctrine. The Opposition provides no basis for this Court to depart from the reasoning of cases declining to extend *Pruneyard* to private social media networks. Because Plaintiff has failed to plead any allegations that Twitter's actions should be considered actions by the State of California,[10] the Court should dismiss Count III.[11]

---

[10] Under the Supremacy Clause, the California Constitution has no relevance to Twitter's actions to the extent that Twitter's actions are (as alleged by Plaintiff) federal actions; the California Constitution only limits actions by California.

[11] At a minimum, the Court should dismiss Plaintiff's prayer for financial relief associated with Count III because, as discussed in the Motion and unopposed, California law bars such recovery. Mot. at 17 n.14

## III. PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS BECAUSE THERE IS NO CLEAR AND UNAMBIGUOUS PROMISE ON WHICH HE COULD REASONABLY RELY.

Plaintiff's Promissory Estoppel claim cannot survive because the Complaint fails to allege any "clear and unambiguous" promise on which Plaintiff reasonably relied. Mot. at 17-19. Plaintiff's Opposition confirms that dismissal is warranted on these grounds.

Plaintiff argues that Twitter's statement that "Twitter's purpose is to serve the public conversation[,]"demonstrates that Twitter "implicitly promised him that it does not 'prohibit viewpoints that oppose wearing masks[.]" Opp. at 17. By arguing that Twitter's "promise" was implicit, Plaintiff concedes that there is no clear or unambiguous promise made to him as required by law. *Aguilar v. Int'l Longshoremen's Union Loc. No. 10,* 966 F.2d 443, 446 (9th Cir. 1992) ("fact that inferences might be drawn from these representations, however, does not transform them into an enforceable promise"); *accord Zepeda v. Holder*, 483 F. App'x 315, 317 (9th Cir. 2012) ("actual, explicit promise"); *Kahn Creative Partners, Inc. v. Nth Degree, Inc.*, No. CV 10-932-JST FFMX, 2011 WL 1195680, at *6 (C.D. Cal. Mar. 29, 2011); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 39 (2021) (plaintiff failed to "not allege[] Twitter ever made a specific representation directly to" plaintiff); *see also* Mot. at 17-18. Because Plaintiff failed entirely to demonstrate any clear and unambiguous promise, the Court can dismiss Count IV on this basis alone.

Plaintiffs' purported expectation that Twitter's Terms of Service would "remain consistent" and did not always "prohibit viewpoints opposing masks" is unreasonable and directly contradicted by the Terms. Opp. at 17-18. The Terms of Service to which Plaintiff agreed explicitly stated that the Terms would be revised and that "the most current version of the Terms" governs. Mot. at 3 n. 4. Moreover, Twitter had the right to remove Plaintiff's content or suspend Plaintiff "at any time for any or no reason." *See* Patchen Decl. Ex. 1 at § 4. It is unreasonable as a matter of law for Plaintiff to rely on a "promise" that is directly contrary to the Terms of Service. *See* Mot. at 18 (citing *Murphy*, 60 Cal. App. 5th at 38); *Malmstrom v. Kaiser Aluminum & Chem. Corp.*, 187 Cal.

App. 3d 299, 319 (1986) ("reliance on representations that contradict a written agreement is not reasonable.").[12]

Plaintiff argues that the Court cannot determine whether the Terms of Service bar the Complaint as a matter of law "at this stage" because the Court cannot "consider factual evidence not in the record." Opp. at 26.[13] This is without merit. As explained in Twitter's *unopposed* Request for Judicial Notice, the Court may properly consider the Terms of Service pursuant to both incorporation-by-reference and judicial notice. *See* Dkt. 71; *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Plaintiff further asserts that the Court "may not take Twitter's word that its current terms of service *as they existed at times relevant to the Complaint,*" claiming a "factual dispute" as to which terms were in effect at the time of the Violative Tweet. Opp. at 27–28 (emphasis in original). But Plaintiff agreed to be subject to the latest Terms of Service, and Twitter maintains an archive of all of its Terms of Service. *See* Twitter, *Previous Terms of Service*, www.twitter.com/en/tos/previous. There is no reasonable question of the accuracy of this archive and no reason why the Court cannot take judicial notice of the current version, as well as the one which preceded it, especially since all contain the same provisions barring this suit. *See id.* at Version 15: June 18, 2020; Patchen Decl. Ex. 1; Request for Judicial Notice.

The Court should also reject Plaintiff's attempt to undo the parties' contract to save his claim. First, Plaintiff asserts that the Court should disregard the Terms of Service because they are unconscionable. Yet Plaintiff does not dispute that he is bound by the clause and in fact concedes that he was limited to publishing posts that "complied with the Social Media Defendants' terms." *Compare* Opp. at 18 (discussing "promise" contained in Twitter's Terms), *with* Opp. at 27 (claiming Terms of Service were unconscionable). Regardless, there is no merit to Plaintiff's claim that the

---

[12] Likewise, it was not reasonable to Plaintiff to believe that the Terms did not prohibit misleading information about masks at the time he posted the Violative Tweet because the Complaint concedes the COVID-19 Misleading Information Policy existed. *See* Mot. at 3–4.

[13] Plaintiff asserts that the Court cannot consider the Terms in various places in the Opposition, including in the context of promissory estoppel. Opp. at 17. Twitter responds to those various arguments collectively here.

Terms here are unconscionable and should be rejected. *Murphy*, 60 Cal. App. 5th at 36 (Twitter terms "allowing it to suspend or terminate users' accounts for any or no reason . . . do[] not shock the conscience or appear unfairly one-sided."); *Chavarria v. Ralph's Grocery Co.*, 733 F.3d 916, 922–23 (9th Cir. 2013) ("Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid" and a "contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it 'shocks the conscience.'"); *see also Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW, 2015 WL 7753406, at *3 (N.D. Cal. Dec. 2, 2015) ("[I]t is reasonable for [a platform] to retain broad discretion over [its] services[.]"). Finally, Plaintiff's efforts to invalidate the Terms of Service flounders on the fact that those Terms have already been enforced in this case, even over claims of unfair bargaining power. *See* Dkt. 34 (Motion to transfer granted based on forum selection clause in Terms of Service); Dkt. 36 at 5–6 (arguing unfair bargaining power as part of Plaintiff's opposition to motion to transfer); Dkt. 45 at 6:4–6 (granting motion and rejecting Plaintiff's argument).

Plaintiff's claim of promissory estoppel cannot survive because he admits Twitter never made an explicit promise that he could violate its Terms and continue to use its platform, and reliance on such a promise would be unreasonable.

## IV. PLAINTIFF'S CLAIMS ARE BARRED.

### A. The First Amendment Bars All Of Plaintiff's Claims As To Twitter.

The relief Plaintiff seeks falls squarely within the First Amendment's protections for Twitter's own speech and editorial judgment. Mot. at 19–20. Plaintiff's Opposition does not challenge Plaintiff's argument or address the cases cited. Based on the unopposed reasoning of the Motion, the First Amendment bars all of Plaintiff's Claims and warrants dismissal is its entirety. *See Knudsen v. Sprint Commc'ns Co.*, No. C13-04476 CRB, 2016 WL 4548924, at *10 (N.D. Cal. Sept. 1, 2016) (Breyer, J.).

### B. Section 230 Bars All Of Plaintiff's Claims.

As Plaintiff concedes, Section 230 provides "broad immunity." Opp. at 25. That broad immunity precludes all of Plaintiff's claims.

As set forth in Twitter's Motion, Section 230(c) independently requires dismissal of Plaintiff's claim. *See* Mot. at 20-21. Section 230(c)(1) immunizes Twitter because removal of content—i.e., the decision not to publish—is the action of a publisher. *Id.* While Plaintiff's Opposition does not expressly address Section 230(c)(1), it asserts that Twitter was not exercising its own "editorial discretion" because the Federal Defendants actually determined what content was "objectionable." *See* Opp. at 23. But Section 230(c)(1) does not turn on Twitter's mental state; "Section 230(c)(1) immunity, however, by its plain terms does not require good faith." *Spy Phone Labs v. Google, Inc.*, 15-cv-03756-KAW, 2016 WL 6025469, at *8 (N.D. Cal. Oct. 14, 2016). Moreover, as discussed above, there are no plausible allegations that the Federal Defendants communicated or were involved in any way with Twitter's decisions with respect to Plaintiff that would substantiate the claim that Twitter was not exercising its own editorial judgment.[14] Accordingly, Section 230(c)(1) applies and bars Plaintiff's claims.

Plaintiff also claims that Section 230 is inapplicable because Twitter did not act of its own volition. *See* Opp. at 22–26.[15] As discussed above, there is no basis for the Court to determine that Twitter's decision to remove the Violative Tweet or lock Plaintiff's account were involuntary. Nor did Plaintiff allege any coercion for Twitter to implement the COVID-19 Misleading Information Policy. *See supra*. Plaintiff also attempts to argue that the removal was not taken in "good faith" but simultaneously concedes that he does not claim "bad faith" but rather "no faith at all." Opp. at 22–23. Regardless, Plaintiff fails to demonstrate or allege any basis to find that Twitter acted in any way contrary to the "good faith" Section 230(c)(2) requires.

Plaintiff next makes a policy-based argument that "this is a unique case with a novel circumstance." Opp. at 25. There is nothing "unique" or "novel" about Plaintiff's circumstance or claims, as evident by the case law rejecting virtually identical factual and legal theories (including

---

[14] Plaintiff claims that one way to determine voluntariness would be to ask whether Twitter "would have taken the material down of their own accord but for government pressure" (Opp. at 23) but Plaintiff bears the burden to plead sufficient factual allegations and he has not done so.

[15] Plaintiff's reliance on *United States v. Rothman*, 492 F.2d 1260 (9th Cir. 1973), is wholly misplaced. There is no basis to find that Twitter was "systematically psychologically coerced" by the Federal Defendants to the point it could not, and did not, act voluntarily. Opp. at 22–23.

in *O'Handley*). No matter the merits of any purported policy arguments, they are irrelevant to the Court's analysis where, as here, "the intent of Congress is clear and unambiguously expressed by the statutory language at issue[.]" *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93–94 (2007).

Plaintiff relies on *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107 (N.D. Cal. 2020) to argue that Section 230 does not apply to his federal constitutional claim. But since the defendant in that case did not seek to apply Section 230 to the constitutional claim, the court's brief discussion is dicta. *Id*. at 1116, 1120. Moreover, the Supreme Court's *Ziglar* decision is predicated on Congress having the power to preclude causes of action, even for constitutional violations. *See* 137 S. Ct. at 1856. Thus, multiple courts have reached the opposite conclusion and upheld Section 230's application to federal constitutional claims. *Daniels v. Alphabet, Inc.*, No. 20-cv-04687-VKD, 2021 WL 1222166, at *11–12 (First Amendment) (N.D. Cal. Mar. 31, 2021); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 953–55 (N.D. Cal. 2020) (First Amendment); *Brittain v. Twitter, Inc.,* No. 19-cv-00114-YGR, 2019 WL 2423375, at *3 (N.D. Cal. June 10, 2019) (First Amendment and promissory estoppel); *Ebeid v. Facebook, Inc.*, No.18-cv-07030-PJH, 2019 WL 2059662, at *3 (N.D. Cal. may 9, 2019) (First Amendment). This Court should follow the majority rule, but it is ultimately unnecessary to decide unless the Court decides that Plaintiff has otherwise plausibly alleged a federal constitutional violation against Twitter.

* * *

For the reasons addressed in the Motion and herein, the Court should dismiss Plaintiff's Complaint with prejudice.

Dated: May 2, 2022

Respectfully submitted,

By: */s/ Jonathan A. Patchen*
Jonathan A. Patchen
Michael Gottlieb
Meryl Conant Governski
Yuhan Alice Chi
**WILLKIE FARR & GALLAGHER LLP**
*Attorneys for Defendant Twitter, Inc.*