IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN HART,<br><br>    Plaintiff,<br><br>v.<br><br>FACEBOOK INC., et al.,<br><br>    Defendants. | Case No. 22-cv-737-CRB<br><br>**ORDER DENYING MOTION FOR LEAVE TO AMEND THE COMPLAINT** |

Over a year ago, the Court dismissed Plaintiff Justin Hart's case because his complaint (1) failed to state a First Amendment claim against Facebook and Twitter and (2) failed to satisfy the causation and redressability elements of standing over the claims against the Federal Defendants. Now, armed with the government's production in response to his FOIA request, discovery from a similar case, and the so-called "Twitter Files," Hart seeks to revive his suit and amend his complaint, saying new information from these sources fixes the deficiencies that initially doomed his case.

Hart is wrong. His new allegations do not support his federal claim. The filing of an amended complaint would thus be futile. Finding oral argument unnecessary, the Court **DENIES** the motion for leave to amend the complaint.

## I. BACKGROUND[1]

In August 2021, Hart filed suit against Facebook and Twitter ("Social Media

---

[1] Because the parties are familiar with the facts of this case, this section provides only a recap. For more details, the Court's prior opinion on dismissal is reported at Hart v. Facebook Inc., 2022 WL 1427507, at *1 (N.D. Cal. May 5, 2022).

1  Defendants"), as well as President Joe Biden, Surgeon General Vivek Murthy, the U.S.
2  Department of Health and Human Services and the Office of Management and Budget
3  ("Federal Defendants").  Compl. ¶¶ 13–18 (dkt. 1).  Hart asserted that the Defendants
4  violated, among other things, his First Amendment rights when Facebook and Twitter
5  removed his posts claiming "Covid is almost gone in America," "Masking Children is
6  Impractical and Not Backed by Research or Real World Data," and "masks don't protect
7  you."  See Or. Granting Mot. to Dismiss ("Or."), at 3–5 (dkt. 87).  Facebook also restricted
8  Hart from posting on his page for three days, and Twitter temporarily locked his account.
9  Id.

10  In May 2022, the Court granted the Defendants' motions to dismiss without leave to
11  amend.  Id. at 18.  The Court found that Hart could not establish Article III standing over
12  the Federal Defendants, and the complaint failed to state a claim for relief on the merits.
13  Id. at 9–18.  Specifically, the complaint did not support theories of joint action between the
14  Federal Defendants and the social media companies and showed no signals of government
15  coercion.  Id. at 18.  Hart primarily relied on and referenced a hodgepodge of statements
16  made by the Federal Defendants at various times and policies enacted by the Social Media
17  Defendants that occurred before the Biden Administration.  See id. at 9–14.  Nonetheless,
18  recognizing that Hart had a pending FOIA request that sought potentially relevant
19  information on the Federal Defendants' supposed communications with Facebook and
20  Twitter, the Court left open the possibility for Hart to amend his case if the eventual FOIA
21  productions reveal facts that "plausibly suggest that 'the [Government] has so far
22  insinuated itself into a position of interdependence with [Facebook and Twitter] that it
23  must be recognized as a joint participant' in enforcing their company policies."  Id.  The
24  Court declined to exercise supplemental jurisdiction over Hart's state law claims against
25  Facebook and Twitter.  Id. at 15.

26  After receiving the FOIA productions, in February 2023, Hart filed the instant
27  motion to amend along with a proposed amended complaint.  Mot. to Amend (dkt. 112);
28  Proposed Am. Compl. ("PAC") (dkt. 112-1).  The proposed amended complaint includes

2

new allegations that the Centers for Diseases Control and Prevention ("CDC") informed Facebook to be on the lookout for misinformation about COVID and COVID vaccines, see PAC ¶¶ 45–50; email communications between the Surgeon General and Facebook where Facebook said it shared the government's goal of removing harmful misinformation about COVID vaccinations and updated the Surgeon General of Facebook's efforts to combat misinformation, id. ¶¶ 72–86; and emails showing that Facebook offered the CDC a $15 million ad credit for public health messaging, id. ¶¶ 39–40.

In addition to citing the FOIA materials, Hart also references the deposition of CDC's Director of Digital Media Carol Crawford and emails involving Deputy Assistant to the President Robert Flaherty, then-White House Senior Advisor Andy Slavitt and Facebook. These were obtained as part of the discovery in Missouri v. Biden, No. 22-cv-1213 (W.D. La. Oct. 6, 2022), where two states and five individuals allege that the President and other federal officials and agencies are violating the First Amendment by coercing social-media platforms to censor disfavored speech. Crawford testified about, among other things, the be-on-the-lookout meetings with social media companies, and Flaherty and Slavitt emailed Facebook about a Washington Post article titled, "Massive Facebook study on users' doubt in vaccines finds a small group appears to play a big role in pushing the skepticism." Pl.'s Ex. 15 (dkt. 112-2 at 540). Hart seeks to add Crawford and Slavitt as defendants in this case. PAC ¶¶ 29–30.

Finally, based on the so-called "Twitter Files" released by Twitter's new owner, Hart alleges that on September 3, 2021, Scott Gottlieb, a board member at Pfizer and a former FDA Commissioner who resigned in 2019—i.e., before the pandemic—wrote to Twitter complaining about one of Hart's posts. Id. ¶ 155.[2]

---

[2] Hart's request for judicial notice that the Federal Government can intervene with Twitter's algorithm code (dkt. 120) is **DENIED**. Hart bases this assertion on a third party's random tweet claiming that "[w]hen needed, the government can intervene with the Twitter algorithm." RJN at 4. The Court can only note that this tweet exists, but it cannot take judicial notice of the truth of its content. See Threshold Enters. Ltd. v. Pressed Juicery, Inc., 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020). Moreover, this tweet is irrelevant to whether the Defendants engaged in joint action and whether the government coerced the Social Media Defendants into removing Hart's posts.

3

## II. DISCUSSION

It is well-established that "[l]eave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." Wheeler v. City of Santa Clara, 894 F.3d 1046, 1059 (9th Cir. 2018). That is, if a "plaintiff's proposed amendments would fail to cure the pleading deficiencies identified by the district court," the court may dismiss the suit without leave. Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011); Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004) ("Futility alone can justify the denial of a motion for leave to amend."). Here, Hart's motion to amend is denied because his new allegations do not support his First Amendment claim.

When the Court dismissed Hart's original complaint, it left opened the narrow possibility for Hart to amend his complaint only if new allegations from the then-pending FOIA productions "plausibly suggest that 'the [Government] has so far insinuated itself into a position of interdependence with [Facebook and Twitter] that it must be recognized as a joint participant' in enforcing their company policies." Or. at 18 (quoting Gorenc v. Salt River Agric. Improvement & Power Dist., 869 F.2d 503, 507 (9th Cir. 1989)).[3] To satisfy this requirement, the plaintiff must show that the state actor participated with the private party in taking a particular action. Id. at 12–14. Put differently, the plaintiff must show that the government was responsible for specific private conduct such that it "dictate[d] the decision" made "in [that] particular case." Blum v. Yaretsky, 457 U.S. 991, 1010 (1982); id. at 1004–05 ("Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives.").

Hart's new allegations fall far short of meeting this demanding standard. Among the newly discovered information, the lone mention of Hart is from the "Twitter Files," which shows that in September 2021, Dr. Scott Gottlieb, who is on Pfizer's board of

---

[3] To be sure, in last year's dismissal order, the Court said that Hart could amend his complaint only if the government's FOIA productions revealed facts that plausibly support an allegation of "joint action" between the government and the Social Media Defendants to moderate Hart's social media posts. Or. at 18. His motion now relies on materials that are not exclusively from the FOIA productions. Nonetheless, his new allegations—regardless of where he got them from—cannot save his case.

4

directors and who served as FDA Commissioner until 2019 (i.e., before the pandemic), complained about Hart's posts to a Twitter lobbyist. PAC ¶ 155. Hart argues that he "was on Dr. Scott Gottlieb's radar as a target." Reply at 6. But Dr. Gottlieb was not serving in the government when Hart posted his challenged statements. That means Dr. Gottlieb was acting as a private individual when he complained to Twitter about Hart. Cf. Marsh v. Cty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) ("actions of a former government employee, without more, cannot amount to state action"). Without more, Hart cannot link the conduct of a private individual to the government.

        Hart's other newly added allegations similarly do not establish joint action or government coercion. That government officials asked Facebook and Twitter to generally be on the lookout for COVID-related misinformation and contacted the platforms about the prevalence of misinformation do not show that the government exercised dominant control over the social media companies' action in temporarily restricting Hart's accounts. See, e.g., Atkinson v. Meta Platforms, Inc., 2021 WL 5447022, at *1 (9th Cir. Nov. 22, 2021) (responding to "unsolicited inquiries does not plausibly allege such a degree of 'interdependence that the state must be recognized as a joint participant'") (quoting Tsao v. Desert Place, Inc., 698 F.3d 1128, 1140 (9th Cir. 2012)); Informed Consent Action Network v. YouTube LLC, 582 F. Supp. 3d 712, 719 (N.D. Cal. 2022) ("statements by members of Congress urging [social media] Defendants to take action" are not "sufficient to show that the Government was a 'joint participant in the challenged activity'"). And that Facebook offered the government $15 million in ad credit for public health messaging is wholly irrelevant to Facebook's decision to remove Hart's challenged posts.

        Finally, Hart argues that Crawford from the CDC "testified that the federal government had insinuated itself into a position of interdependence with the Social Media Defendants by holding regular [Be on the Lookout] meetings to assist them with implementing their misinformation policies." PAC ¶ 136. This argument is illustrative of the type of "legal conclusion couched as a factual allegation" that courts reject at the pleading stage. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949–50 (2009) ("[C]onclusory

5

1  allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss
2  for failure to state a claim."). In any event, Hart misconstrues Crawford's testimony.
3  Crawford testified that the CDC held only two be-on-the-lookout meetings with social
4  media companies, Pl.'s Ex. 14 (dkt. 112-2), at 400; that Twitter made its own content-
5  moderation decisions "based on whatever policy they had," id. at 413; and that the CDC
6  "did not discuss the development of [content-moderation] policies, or the enforcement of
7  [those] policies" with the companies, id. at 307. Thus, contrary to Hart's argument,
8  Crawford's deposition testimony from Missouri does not show that the Federal Defendants
9  exerted control over social media companies or that the Federal Defendants and the Social
10 Media Defendants had "a meeting of the minds to violate constitutional rights." See
11 O'Handley v. Weber, 62 F.4th 1145, 1159 (9th Cir. 2023); see also Or. at 13 ("The one-
12 way communication alleged here falls far short of 'substantial cooperation.'").

13 Although Hart argues that the Social Media Defendants aligned their policies and
14 algorithms to the government's goal of targeting misinformation, see Mot. at 4, this does
15 not support a First Amendment claim: "There is nothing wrongful about [Facebook and]
16 Twitter's desire to uphold the integrity" on their platforms. See O'Handley, 62 F.4th at
17 1159. Again, there is no plausible indication from the proposed complaint that the Federal
18 Defendants have "significantly involve[d] [themselves] in the private parties' actions and
19 decisionmaking." Id.; see also id. at 1160 (noting "[t]his test is intentionally demanding
20 and requires a high degree of cooperation between private parties and state officials to rise
21 to the level of state action").

22 Accordingly, Hart's motion to amend fails on futility grounds. See, e.g., Children's
23 Health Defense v. Facebook, Inc., 546 F. Supp. 3d 909, 931 (N.D. Cal. 2021) (holding that
24 plaintiff's threadbare allegations that Facebook and the government were "working
25 together" to "promote universal vaccination" were insufficient to allege joint action where
26 the plaintiff failed "to allege specific facts establishing the agreement or a meeting of the
27 minds relating to Facebook's deletion of [the plaintiff]'s Facebook page"); Federal Agency
28 of News LLC v. Facebook, Inc., 432 F. Supp. 3d 1107, 1125 (N.D. Cal. 2020) (same).

### III. CONCLUSION

Hart's motion for leave to amend the complaint is **DENIED**. The case is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: May 9, 2023



CHARLES R. BREYER
United States District Judge

7